### 69238. MAY v. POOLE.
(329 SE2d 561)

Beasley, Judge.

The instant appeal arose out of dispossessory proceedings brought by the plaintiff landlord against the defendant lessee and the subtenant, who was dismissed after it vacated the premises during the proceedings. The dispossessory warrant dated September 20, 1982, was predicated on the failure to pay rent for the months of August and September 1982. It was alleged that demand for possession had been sent to the subtenant on September 10, 1982, and that possession had been refused by it. There was no allegation of any demand or notice to lessee.

The joint answer did not expressly deny that demand was made but set forth that defendants were not in arrears because the rental had been overpaid by $55 per month for a period of 65 months. By amendment after subtenant moved out, the lessee counterclaimed against the landlord and cross-claimed against the subtenant for the alleged overpayment which had been made by the subtenant directly to the landlord; he also sought damages from the landlord for profits lost when he was prevented from subleasing the premises after November 16 (to the end of the lease October 1, 1983, or until he regained possession of the premises following trial).

During the course of the litigation, all of the parties entered into a consent order on November 8 agreeing that lessee could retain possession if he paid $790 for rent to plaintiff's attorney not later than November 29 (apparently for December) and $790 payments per month on the first of each month beginning January 1, 1983. All agreed that the subtenant would vacate the premises by November 29, or a writ of possession instanter would issue against it. It was expressly provided that the lessee's payment of $790 was not to be considered an admission against interest by him or an admission by him that this was the correct amount of rent due per month; the issues involving these matters were thus to be preserved for trial.

The subtenant vacated before November 29, and there is evidence that lessee tendered a check for $790 to plaintiff's attorney on November 29, and that it was refused. Earlier, on November 16, plaintiff's counsel sent a letter to lessee claiming that rent was in arrears and that the lease was terminated forthwith "pursuant to paragraph eleven (11)[1] of your lease." It further stated that, although the lease was cancelled forthwith, subtenant would be permitted to remain until November 29, but that any entry by lessee would constitute a trespass.

The case was tried before a jury in mid-September 1983. The jury returned a verdict for lessee on the dispossessory action and also found for him on the counterclaim, in the amount of $9,258. The cross-claim was voluntarily dismissed by lessee. The court entered judgment dismissing the dispossessory warrant and awarding lessee the amount of the verdict. After motions were made and denied, this appeal was taken by the landlord.

As divulged by the evidence, the events leading up to the filing of the dispossessory are as follows. On August 15, 1973, defendant lessee entered into a Commercial Leasing Contract with the Perimeter Development Company, for ten years to terminate October 1, 1983. Lessee originally operated a retail hardware store on the leased premises, a 2,500 square foot area, for $595 per month. Shortly thereafter, he leased an additional 1,800 square foot warehouse space for $225 per month, a total of $820.

On February 1, 1977, lessee subleased only the central area to Mountain Park Sporting Goods ("Mountain Park") for five years terminating October 1, 1983, for a monthly rental of $650. This was $55 more than lessee was required to pay the landlord. The lease agreement for the warehouse space had been terminated prior to the commencement of the sublease with Mountain Park, so it was not included. However, Mountain Park made an independent agreement with the landlord for use of some of the warehouse space for which it was to pay $140 per month. This subtenant sent the whole rental payment of $790 ($650 for the store and $140 for the warehouse space) directly to the owner, first to Perimeter Development and, after plaintiff bought the premises on October 17, 1979, to him or his agent. Lessee did not receive the difference of $55 per month for this period of February 1977 through July 1982, when payment ceased. *Held*:

1. Appellant enumerates as error the overruling of his objection to testimony by lessee "regarding a demand for possession of the premises prior to the filing of the dispossessory warrant," on the

---

[1] "Should Lessee fail to pay any rental installment when due and continue in default for over thirty (30) days after written notice of such default, the Lessor may at its option declare this lease void, cancel the same and re-enter and take possession of the premises."

ground it was not raised in the pleadings. The court did not err.

In the first place, the testimony referred to does not relate to the statutory demand for possession, which landlord by his own evidence and on his dispossessory affidavit showed was not made on lessee. Instead, the complaint relates to lessee's reading of the lease provision quoted in footnote 1 hereof and stating that he received no such notice. That evidence would not be relevant to the statutory demand, because landlord had chosen the legislatively-provided dispossessory remedy rather than the contract-provided termination remedy. The notice provision in the lease did not first have to be fulfilled, because the lease did not expressly waive the statutory right. *Perimeter Mall, Inc. v. Retail Sense, Inc.*, 162 Ga. App. 465 (291 SE2d 392) (1982). The evidence instead related to lessee's counterclaim for breach of the lease by landlord's refusal to allow lessee to have possession after November 16. The issue was fairly raised by the counterclaim, which alleged that lessee was not in default under the lease and that the notice of November 16 wrongfully deprived him of the premises. To prove this, of course, he would be entitled to prove that, even if he were in default in rental payments, which he denied, the lease-required notice-before-termination had not been given. Notice pleading does not require an express raising of an issue fairly comprehended by the allegations. *Poole v. City of Atlanta*, 117 Ga. App. 432, 434 (160 SE2d 874) (1968).

Moreover, the issue of proper notice under the lease was raised by the landlord in his case-in-chief. He introduced the lease in evidence, testified through his agent that a "three-day notice" to pay arrears or surrender possession was delivered to the subtenant (reasonably inferable by the jury to be the same as those notices later tendered by defendant and admitted without objection), and did not object to defendant's introduction of the November 16 letter which two months after the dispossessory was filed, and in derogation of the intervening consent order, expressly relied on this very paragraph in declaring the lease terminated. Thus, even if the issue had not been raised by the pleadings, plaintiff landlord raised it and could not complain when defendant lessee sought to challenge his position of compliance. OCGA § 9-11-15 (b). *McDonough &c. Co. v. McLendon &c. Co.*, 242 Ga. 510, 514 (250 SE2d 424) (1978).

Finally, the landlord having already introduced the lease in evidence, lessee's reading aloud paragraph 11 of it was cumulative. And as to lessee's testimony that he did not receive any thirty-day notice before the dispossessory, the landlord did not contend that he had.

2. Appellant enumerates as error the trial court's refusal to charge the jury OCGA § 13-1-13 with respect to voluntary payments. First of all, there was no written request but only an oral one, and he was not prepared with it. Thus he cannot complain when the judge

declined to read that Code section to the jury. *Hudson v. Columbus*, 139 Ga. App. 789 (2) (229 SE2d 671) (1976).

Moreover, the evidence did not support such a charge. It showed that the subtenant made monthly payments of $790 to the owner because he had a sublease with the lessee for $650 for the store and an agreement with the owner's representative for warehouse space for $140. He did not know that the primary lease called for $595, and lessee did not demand the difference from him due to an oversight so it merely accumulated. Plaintiff's agent admitted in testimony that $595 a month was the rental for the 2,400 square foot area, but he did not know that figure was attributable to the store until after the suit was filed. He just received the total rent of $790, when he began acting as agent in 1980. Thus, there was no evidence that payments of $790 to plaintiff's agent, without credit being given to the lessee, were "payments of claims . . . where all the facts are known" and thus the law deeming such payments of claims "voluntary" and therefore unrecoverable did not apply. See *New York Life Ins. Co. v. Williamson*, 53 Ga. App. 28 (184 SE 755) (1936); *Bryant v. Guaranty Life Ins. Co.*, 40 Ga. App. 573 (150 SE 596) (1929). Here, it is without dispute that both the payer subtenant, and the receiver, plaintiff's agent, did not know that the rent for the store was $595 and that the jury could find that the lessee should have been receiving $55 each month either from the subtenant or from the landlord as a credit.

3. The court did not err in awarding judgment against the landlord and dismissing the dispossessory warrant, in conformity with the verdict. The landlord's evidence established without question that he did not follow the procedure required by law, OCGA § 44-7-50, in that he did not make any demand for possession upon the lessee. "[I]n every case, a timely demand for possession is a condition precedent to the institution of dispossessory proceedings under Code Ann. § 61-301 [OCGA § 44-7-50]." *Metro Mgt. Co. v. Parker*, 247 Ga. 625, 629 (278 SE2d 643) (1981), citing *Wilensky v. Agoos*, 74 Ga. App. 815 (41 SE2d 565) (1947). "A demand upon a tenant to deliver possession to his landlord is a condition precedent to the right of the landlord to dispossess the tenant summarily under [OCGA § 44-7-50]." *Bussell v. Swift*, 50 Ga. App. 148 (1) (177 SE 277) (1934). The landlord's case initiating pleading, the affidavit for dispossessory warrant, shows on its face that he made no demand on his tenant, and his testimony confirmed it. Even if demand on the subtenant were sufficient to meet the statutory prerequisite, which we do not hold to be the case, and even if the three-day notice is regarded as a sufficient demand, the evidence was in dispute as to whether such notice was given to the subtenant, and the jury was thus authorized to find that it was not.

4. Appellant enumerates as error the court's denying his motion for directed verdict pursuant to OCGA § 9-11-50 (b), which was filed

and ruled upon after judgment had been entered. His motion in essence was a motion for judgment notwithstanding the verdict, and he claimed that he had proved a prima facie case and defendant failed to prove a defense, as a matter of law. However, as we have shown above, he proved that he filed the dispossessory warrant prematurely, without proper demand.

5. Appellant further enumerates as error the entry of judgment of $9,258 for lessee on his counterclaim. Lessee claimed $55 per month for the 65 months in which the landlord had received $790 a month from the subtenant, or a sum of $3,575, which defendant testified should have been credited to his account. From this, the jury would have to subtract $2,940, i.e., $735 per month rent for August, September, October, and November, when rent was not paid and subtenant was in possession. The difference is $835. He also claimed lost profits from the time he was forbidden to reenter in mid-November 1982 to the trial, which was two weeks prior to the expiration of the lease, October 1, 1983.[2] Thus the counterclaim was bottomed in part on the allegation that lessee would have been able to make a profit and actually a greater profit than he had been able to establish in his sublease with Mountain Park, if he had not been precluded from regaining possession of the premises and had been able to sublease the store space.

"The general rule as to the recoverability of lost profits as an item of damages is that the expected profits of a commercial venture 'are not recoverable as they are too speculative, remote, and uncertain.' " *Molly Pitcher &c. v. Central &c. R. Co.*, 149 Ga. App. 5, 10 (4) (253 SE2d 392) (1979). As explained in *Cooper v. Nat. Fertilizer Co.*, 132 Ga. 529, 535 (64 SE 650) (1909), "[t]he profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertation, and the loss of them traceable directly to the defendant's wrongful act, they are too speculative to afford a basis for the computation of damages." The policy is succinctly stated in *Tendrift Realty Co. v. Hayes*, 140 Ga. App. 896 (1) (232 SE2d 169) (1977): "Where a party makes a claim for a monetary sum, though it be by counterclaim, it is incumbent upon him to present evidence showing the amount of loss in a manner in which the jury can calculate the amount of the loss with a reasonable degree of certainty. An allowance for damages cannot be based on guesswork."

Here, there was evidence which would justify a finding that the

---

[2] Although there was an option to renew for another ten years in the lease, lessee never exercised it by giving the required written notice, which was to be done at least 120 days prior to its expiration. Nor did lessee claim any lost profits for any of the option period. Thus, the renewal period is not involved here.

commercial property could be rented yearly for at least $6.50 to a maximum of $8.50 per square foot and that the area comprised 2,500 square feet. There was also evidence that a party would have rented from the lessee but that party only utilized 900 square feet and did not open her business until July 1983. Even if the business had begun renting in March when discussions began, the rental period would have been only seven months until October 1, 1983, when the lease expired. Thus, 900 square feet x $8.50 per square foot equals $7,650 x 7/12 of one year for a total of $4,461.94 gross rental. However, defendant's expenses per month were $595 per month x 7 months for a total of $4,165. Net is $296.94.[3] Since $9,258 grossly exceeds the maximum combined amount of $1,131.94 established, the verdict cannot stand.

*Judgment reversed with direction that a new trial be granted on the counterclaim. Birdsong, P. J., and Carley, J., concur.*

DECIDED MARCH 12, 1985 —
REHEARING DENIED MARCH 28, 1985 — 

*D. W. Rolander, Thomas L. Burton, John R. Leonhardt*, for appellant.
*Theodore P. Bianco*, for appellee.

---

[3] There was no contention that sublessee would have stayed until the expiration of his lease on October 1, 1983, but for the dispossessory. He vacated largely because of a failing business and inability to pay the rent. Thus lessee was not seeking the $55 per month profit he might have claimed if Mountain Park had remained a viable subtenant.