In re Doris **ROBINSON,** Debtor.

Doris **ROBINSON,** Plaintiff–Appellant,

v.

**CHICAGO HOUSING AUTHORITY,**
Defendant–Appellee.

No. 93 C 5675.

United States District Court,
N.D. Illinois,
Eastern Division.

June 24, 1994.

---

David S. Yen, Clara A. Carter, Legal Assistance Foundation of Chicago, Chicago, IL, for debtor/plaintiff-appellant Doris Robinson.

Gary G. Schiff, Chicago, IL, for defendant appellee Chicago Housing Authority.

Offices of Jack McCullough, Standing Trustee, Chicago, IL.

## MEMORANDUM, OPINION AND ORDER

ANDERSEN, District Judge.

This is an appeal by debtor-appellant Doris Robinson from a final order of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division granting appellee Chicago Housing Authority's (CHA) motion for relief from automatic stay.[1] The principle issue is whether the bankruptcy court erred in granting relief from the automatic stay to CHA. Robinson contends that the bankruptcy court erred in deciding that the trustee was not entitled to assume Robinson's lease pursuant to 11 U.S.C. § 365(a) because the lease had terminated. Robinson also asserts that even if her lease has expired, CHA cannot refuse to renew the lease because such action would constitute discriminatory treatment by a governmental unit in violation of 11 U.S.C. § 525(a).

Robinson alternatively argues that the stay should have remained in effect for three reasons. First, she argues that the court should permit her to remain on the premises while she litigates her claim that CHA's action constitutes a fraudulent conveyance. Second, she contends the stay should remain in effect because CHA is adequately protected. Third, she states we should allow her to remain on the premises because she has equitable interests in the property. For the reasons stated below, we affirm the decision of the bankruptcy court.

## FACTS

The facts are not disputed by the parties.

Robinson has lived in CHA housing for approximately 35 years and has resided in the apartment at issue for the last 15 years. Her rent is currently $22 per month. By December of 1992, Robinson owed CHA $66 for three months of unpaid back rent. When she tried to pay $60 of what she owed, CHA would not accept it. On January 7, 1993, CHA served Robinson with a 14 day notice of termination of tenancy which stated that Robinson's failure to pay $88 within 14 days would result in termination of her lease on the 15th day. Robinson failed to cure her default during this period.

CHA filed a Forcible Entry and Detainer action against Robinson in the Circuit Court of Cook County, Illinois on February 23, 1993. On May 4, 1993, the Circuit Court entered a judgment order in favor of CHA, deciding that, if CHA management at this particular housing unit did not want to accept Robinson's rent, the writ of possession would issue on June 3, 1993. Although Robinson

---

1. 11 U.S.C. § 362. Automatic stay

    \*    \*    \*    \*    \*    \*

   (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

   (2) with respect to a stay of an act against property under subsection (a) of this section, if—

   (A) the debtor does not have an equity in such property; and

   (B) such property is not necessary to an effective reorganization.

attempted to pay her rent between May 4 and June 3, 1993 CHA refused to accept it.

On June 3, 1993, Robinson filed a bankruptcy petition and asked that the trustee assume her lease under her Chapter 13 reorganization plan. Robinson retained possession of the apartment.

### DISCUSSION

A federal district court operates as an appellate court in bankruptcy proceedings. As such, it is bound to accept the bankruptcy court's findings of fact unless they are "clearly erroneous." Fed.R.Civ.P. 52(a); *In re Evanston Motor Co., Inc.*, 735 F.2d 1029, 1031 (7th Cir.1984). Review of the bankruptcy court's conclusions of law, however, is not so restricted. *Evanston*, 735 F.2d at 1029. Accordingly, this Court subjects the bankruptcy court's conclusions of law to *de novo* review. *Id.; In re UNR Industries, Inc.*, 986 F.2d 207, 208 (7th Cir.1993).

### I. ASSUMPTION OF THE LEASE

■ Pursuant to *In re Maxwell*, 40 B.R. 231 (N.D.Ill.1984), the bankruptcy court held that the trustee could not assume the lease as part of Robinson's Chapter 13 reorganization plan because the lease had terminated at the time she filed for bankruptcy. "It has been conclusively established that a bankruptcy court cannot resurrect [or allow a trustee to assume] a lease that has been *terminated* prior to the filing of bankruptcy" (emphasis added). *Maxwell*, 40 B.R. at 236. According to 11 U.S.C. § 365(a), a bankruptcy trustee can "assume or reject any executory contract or *unexpired* lease of the debtor" (emphasis added). Robinson maintains that even if her lease had terminated at the time she filed for bankruptcy, it did not expire under § 365(a) because she had several months remaining on her lease. Thus, Robinson concludes that her unexpired lease became part of her estate, and she is now permitted to cure the default as part of her Chapter 13 plan. We disagree.

■ Robinson challenges the ·*Maxwell* court's decision that a trustee cannot assume a lease which has been terminated for the debtor's nonpayment of rent even though the

lease has not expired by the passage of time. According to Robinson, § 365(a) permits assumption of unexpired leases. Because Robinson's lease has not literally expired by the passage of time, she claims the trustee can assume the lease. She states that the Bankruptcy Code draws an explicit distinction between a lease that has "expired" and one that has "terminated." In support of her argument, Robinson points out that §§ 362(b)(10), 541(b)(2) and 365(c)(3) give debtors less protection if their lease has terminated by "the expiration of the stated term of the lease," or if the lease "has been terminated under applicable nonbankruptcy law." Robinson concedes that neither "expiration" nor "termination" is defined in the Code. We disagree with her contention that these provisions offer any meaningful guidance as to how we should interpret the word "expire" as used in § 365(a).

Sections 362(b)(10) and 541(b)(2) merely describe one way a lease can expire, and § 365(c)(3) simply points out that termination can take place under non-bankruptcy law. The section at issue here, § 365(a), does not give any guidance as to the circumstances that would give rise to expiration. Further, there is no reason to believe Congress intended expiration to take place only if the term of the lease has lapsed. If Congress wanted to change this result and many other similar results reached by other courts throughout the country, it could have done so by altering the language of § 365(a) when it amended the Bankruptcy Code in 1984. Congress chose not to do so.

■ Decisions made both before and after the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333, show overwhelming agreement among the courts that state law determines when a lease terminates. *See, e.g., In re Sudler*, 71 B.R. 780, 785 (Bankr.E.D.Pa. 1987). Therefore, we see no reason to reject *Maxwell's* holding that in Illinois, "the termination before bankruptcy of a lease pursuant to its terms and applicable State law results in its expiration." *Maxwell*, 40 B.R. at 237.

*Cunningham v. Lifelink Corp.*, 159 B.R. 230 (N.D.Ill.1993) supports this reasoning. In that case, Judge Moran was confronted

with the same issue presented in the case at hand and concluded that "Illinois courts do not make a distinction between termination and expiration of a lease." *Id.* at 235. The cases from Florida and Tennessee which Robinson cites in support of her position, i.e., *Ross v. Metropolitan Dade County,* 142 B.R. 1013 (S.D.Fla.1992), *aff'd without op., Metropolitan Dade County v. Ross,* 987 F.2d 774 (11th Cir.1993), and *In re Talley,* 69 B.R. 219 (Bankr.M.D.Tenn.1986), simply determine when a lease expires in their respective states for purposes of § 365(a). They have no bearing on the question of whether a lease has expired in Illinois. We agree with Judge Moran that the applicable Illinois statute is 735 ILCS § 5/9–209 which states:

> A landlord ... may, at any time after rent is due, demand payment thereof and notify the tenant, in writing, that unless payment is made within a time mentioned in such notice, not less than 5 days after service thereof, the lease will be terminated. If the tenant does not within the time mentioned in such notice, pay the rent due, the landlord may consider the lease ended, and sue for the possession under the statute in relation to forcible entry and detainer, or maintain ejectment without further notice or demand.

Robinson concedes that she received proper notice, yet failed to pay her rent within the 14 days allotted by the CHA. At this point, her lease was terminated, and it expired pursuant to § 365(a).

The fact that Robinson was still in possession of the apartment at the time she filed for bankruptcy does not change this result. "Once a lease is terminated prior to the intervention of bankruptcy, the landlord-tenant relationship is gone regardless of the protection of the right of possession." *Maxwell,* 40 B.R. at 237.

Robinson cites *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 274, 89 S.Ct. 518, 522, 21 L.Ed.2d 474 (1969) and *Chicago Housing Authority v. Harris,* 49 Ill.2d 274, 275 N.E.2d 353 (1971) for the proposition that *Maxwell* does not apply to tenancies in federally subsidized public housing. We reject this contention.

These cases do not address the issue of when a lease is terminated, but rather stand for the proposition that in certain contexts, a tenant residing in subsidized housing has greater rights than tenants living in non-subsidized housing. However, "the rights of such a tenant are mandated by the relevant statute." *Cunningham,* 159 B.R. at 233. As discussed above, we believe that Illinois law does not grant tenants living in subsidized housing the right to avoid termination of a lease simply because they maintain physical possession of the premises.

Moreover, the relevant federal regulations governing Housing and Urban Development owned projects likewise do not grant tenants living in subsidized housing the ability to avoid termination of a lease by maintaining possession. Under 24 C.F.R. 247.3(a), the landlord can terminate a tenant's lease because of: "(1) material non-compliance with the rental agreement; (2) material failure to carry out obligations under any State landlord tenant act, or; (3) other good cause." 24 C.F.R. 247.3(c)(1) states that "substantial violations of the rental agreement" constitute "material non-compliance with the rental agreement." "Nonpayment of rent" is explicitly listed as a "substantial violation of the rental agreement." 24 C.F.R. 247.3(c)(4).

Thus, for the forgoing reasons, Robinson's lease validly terminated and expired under both federal and state law by failing to pay the rent due during the 14 day notice of termination period. Thus, the trustee could not assume Robinson's lease under her Chapter 13 plan, and the bankruptcy court's decision on this issue is affirmed.

## II. RENEWAL OF THE LEASE

Robinson's second argument was not addressed by the bankruptcy court. She claims that, even if the trustee cannot assume Robinson's lease because it has expired, CHA cannot refuse to renew the lease without violating 11 U.S.C. § 525(a). This section states that:

> . a governmental unit may not deny, revoke, suspend or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant

against ... a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act ... solely because such bankrupt or debtor is or has been a debtor under this title or a debtor or a bankrupt or a debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

In essence, Robinson argues that § 525(a) prohibits CHA, as a governmental unit, from refusing to renew her lease based on her failure to meet her pre-petition rental obligation, which is a debt dischargeable under the Bankruptcy Act. We disagree.

Robinson cites several cases in support of her argument, but none are fully on point with the facts at hand. She relies heavily on *In re Curry,* 148 B.R. 966 (S.D.Fla.1992). In that case, the court held that a public housing authority violated § 525(a) by maintaining state eviction proceedings for non-payment of rent against tenants who filed Chapter 7 petitions in bankruptcy after the eviction action was filed, but before judgment. Even if we agreed with the reasoning in *Curry,* that case is distinguishable from the present action for two main reasons.

First, in *Curry,* the public housing authority attempted to secure a state court judgment to evict the tenants after they had filed for bankruptcy. Here, when CHA filed its action against Robinson on February 23, 1993, and the Circuit Court entered judgment on May 4, 1993, Robinson had not filed for bankruptcy. In fact, it was not until June 3, the exact day the Circuit Court ordered the writ of possession to issue, that Robinson filed her petition. Thus, the CHA's actions cannot discriminate against a debtor or a bankrupt because CHA could not have possibly known Robinson was a debtor until June 3, 1993 at the earliest.

Second, and perhaps more importantly, the court in *Curry* made a specific finding of fact that the public housing authority attempted to evict tenants solely because they failed to pay a debt that was dischargeable in bank-

ruptcy. *Id.* at 972. In contrast, in this case, no finding was made that CHA initiated an eviction proceeding against Robinson solely because she failed to pay a dischargeable debt. On the contrary, the transcript of proceedings before the bankruptcy court indicate that CHA wanted to evict Robinson simply because she stopped paying rent. The following exchange took place between the court, Robinson's attorney, Mr. Yen, and the appellee's attorney, Mr. Schiff:

THE COURT: All right. Full payment of the rent was not made. Is that correct? There was a dispute.

MR. YEN: Prior to filing the bankruptcy, no, it was not.

MR. SCHIFF: Your Honor, this is actually a state court judgment.... A state court judgment for possession was entered. A forcible entry and detainer action was filed February 23. State court judgment was entered on May 4, 1993.

TR. 8/9/93, pp. 2–3.

■ We hold that a public housing authority does not discriminate against a tenant under § 525(a) by refusing to renew the tenant's lease and secures a Forcible Entry and Detainer judgment *before* the tenant files for bankruptcy. The case of *In re Lutz,* 82 B.R. 699 (Bankr.M.D.Pa.1988) supports this holding. In *Lutz,* although the landlord was not a governmental unit, the court concluded that even if it was, it would not have violated § 525(a) when the landlord secured a judgment for eviction in state court for the tenant's failure to pay rent, prior to the tenant filing for bankruptcy. *Id.* at 699, 703. After an exhaustive analysis of the legislative history of § 525(a), the *Lutz* court stated:

Section 525 of the Code is aimed at discriminatory treatment by governmental units. It does not cure defaults and does not require governmental units to continue a contractual relationship with a debtor when, pursuant to the terms of that contract, the prepetition default constitutes cause for terminating the contractual relationship. Unless it is shown that the creditor was attempting to collect a prepetition debt, or was otherwise discriminating against the debtor, a governmental unit's

termination of a lease based on a prepetition default is not per se a violation of section 525 of the Bankruptcy Code. *Id.* at 705.

As discussed above, Robinson's default on her rent before she filed for bankruptcy constitutes a valid cause for CHA's termination of her lease. There is no evidence to indicate CHA is attempting to collect a debt incurred by Robinson prior to her filing for bankruptcy. CHA simply exercised its right to evict Robinson pursuant to federal and state law.

■ Our conclusion is not only sound as a matter of law, but makes sense as a matter of public policy as well. Although the Bankruptcy Code was enacted to give debtors a "fresh start," *see Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934), Congress never intended for it to serve as a shield from every conceivable negative consequence that follows from one's failure to remain solvent. If we were to hold that CHA could not evict the tenant in this case, one must wonder exactly when CHA could legally refuse to renew the lease of someone who has filed for bankruptcy. The potential for abuse is great. Tenants in federally-subsidized housing must have some motivation for paying their rent on time, and bankruptcy should be perceived as something to avoid. A contrary ruling by this court would encourage tenants to forgo rental payments. Tenants would know that if they simply file for bankruptcy, not only could they discharge their debt, but CHA would have no way to evict them as well. This court will not sanction such a detrimental result.

### III.  OTHER ARGUMENTS

Robinson argues that the bankruptcy court should have allowed the automatic stay to remain in effect for three reasons.

■ First, Robinson argues that the stay should remain in effect pursuant to 11 U.S.C. § 548(a)(2) because the CHA fraudulently conveyed her lease. Under this section, three elements must be shown: 1) a transfer of an interest of the debtor in property; 2) the debtor was insolvent at the time of the transfer; and 3) the debtor received less than a reasonably equivalent value in exchange for such transfer. Robinson argues that since she did not receive anything of value for the loss of her lease, the surrender of her lease was made for less than a reasonably equivalent value. She concludes that the termination of her lease constitutes a fraudulent conveyance. This argument must fail because, when Robinson's lease terminated, her interest in the property terminated as well. Thus, because no property interest belonging to Robinson was transferred, she has failed to prove the first element. We therefore reject her contention.

■ Second, Robinson asserts that the stay should have remained in effect because CHA is adequately protected. She claims that CHA will not suffer any financial harm, because under Robinson's Chapter 13 plan, CHA is classified as a preferred unsecured creditor and will receive priority in payment over other creditors. Even if we agreed with the contention that CHA is adequately protected, it is irrelevant since we have held that the trustee cannot assume the lease. Therefore, this argument must fail as well.

■ We also reject Robinson's third argument that the stay should have remained in effect because she has equitable interests in the property. According to Robinson, she has equity in the property because "it represents a valuable property right to her," and the property is necessary for her effective reorganization. Robinson does not present any case law to support either of these arguments, and we have found none. We do not believe Robinson actually has equity in her property, or that it would necessarily change our conclusion if she did. Further, the *Maxwell* court already addressed Robinson's "necessary for her effective reorganization" argument by holding that a court, "will not revive a terminated lease simply because of the lease's importance to the [debtor's] reorganization efforts." *Maxwell,* 40 B.R. at 238.

### *CONCLUSION*

For the forgoing reasons, the decision of the bankruptcy court granting CHA's motion for relief from the automatic stay is affirmed.