In re Valecia M. CALDWELL, Debtor.

**HOUSING AUTHORITY OF CITY OF DECATUR, Movant,**

v.

**Valecia M. CALDWELL, Respondent.**

**Bankruptcy No. 94–60696.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Nov. 22, 1994.

Sidney Gelernter of McCurdy & Candler, Decatur, GA, for movant.

Donald M. Coleman, Atlanta Legal Aid Soc., Decatur, GA, for respondent, debtor.

### ORDER GRANTING RELIEF FROM THE STAY

JAMES E. MASSEY, Bankruptcy Judge.

The Housing Authority of the City of Decatur, Georgia moves pursuant to 11 U.S.C. § 362(d) for an order modifying the automatic stay imposed by section 362(a) to permit it to evict the Debtor from an apartment she occupies. The Housing Authority contends that on or about November 22, 1993, it termi-

nated a lease with the Debtor for nonpayment of rent in accordance with the provisions of 24 C.F.R. § 966.4(l)(2)(i) and properly gave the Debtor notice of termination pursuant to 24 C.F.R. § 966.4(l)(3). The State Court of Dekalb County, Georgia entered an order and judgment on January 4, 1994, directing that a writ of possession issue on January 14, 1994, the date on which the Debtor commenced this action. That judgment also provided that Movant recover from the Debtor the sum of $476 for rent.

The Debtor contends that the Housing Authority has not terminated the lease and that it sought to evict her in violation of 11 U.S.C. § 525(a) because she is or was insolvent. She also contends, though without much enthusiasm, that because the summons she received in December 1993 specified an answer date that was a holiday, the lease could not have been terminated as a matter of law.

The issue presented is whether the Housing Authority has shown cause for relief from the automatic stay, and if so, whether eviction of the Debtor by the Housing Authority would violate 11 U.S.C. § 525(a). Because the Movant is otherwise entitled to relief from the automatic stay and because section 525(a) does not revive a terminated lease or pre-empt the rights of a lessor under section 365, the court grants the Housing Authority's motion.

### STATEMENT OF FACTS

The facts are not in dispute. The Debtor is a recipient of federal public benefits. She lives in an apartment owed by the Movant and in 1993 had a written lease for that apartment. She admits that she did not pay rent during November and December 1993 but alleges that she was unable to do so because of illness. She contends that the Housing Authority was required to lower her rent for those months and that it failed to do so. She also contends that she has attempted to tender rent to the Housing Authority, which it has refused to accept.

Notwithstanding her contentions, the Debtor, through her attorney, admitted at oral argument of this motion that on or about November 22, 1993, the Housing Authority

took proper steps to terminate the lease with the Debtor for nonpayment of rent in accordance with the provisions of 24 C.F.R. § 966.4(*l*)(2)(i). She also concedes that it properly gave her notice of termination pursuant to 24 C.F.R. § 966.4(*l*)(3).

After notifying the Debtor that it had terminated the lease, the Housing Authority filed a petition for a writ of possession in the State Court of Dekalb County, Georgia that mistakenly called for an answer to be filed by December 24, 1993. On that date, however, the courthouse was closed. The Debtor nonetheless filed a timely answer on December 27, 1993, the date on which the answer was legally due. The State Court entered an order and judgment on January 4, 1994, directing that a writ of possession issue on January 14, 1994. It found that the Debtor had not been harmed by the error concerning the answer date. The judgment provided that the Housing Authority was entitled to a writ of possession and was entitled to recover from the Debtor the sum of $476 for rent. On January 14, 1994, before the writ could be executed, the Debtor filed this case under Chapter 13 of the Bankruptcy Code. On February 2, 1994, she voluntarily converted the case to one under Chapter 7.

## CONCLUSIONS OF LAW

A. *Termination of the Lease.*

 The Debtor's contention that the lease was not terminated either because of the error on the dispossessory petition or because she remains in possession is without merit. In Georgia, a lease agreement may be terminated because of a default in one of two ways: either (1) the lease provides for termination because of a default and any necessary steps to accomplish the termination take place as set forth in the lease or as required by applicable law, or (2) the lessor files a dispossessory action and the tenant is actually evicted from the premises. *See Metro Management Co. v. Parker,* 247 Ga. 625, 627–28, 278 S.E.2d 643 (1981); *May v. Poole,* 174 Ga.App. 224, 329 S.E.2d 561 (1985); *Perimeter Mall v. Retail Sense, Inc.,* 162 Ga.App. 465, 291 S.E.2d 392 (1982). Thus, eviction is not a prerequisite to termi-

nation if the lease agreement itself provides for its termination upon a default.

 When a tenant under a terminated lease files a bankruptcy case, the bare equitable interest of possession is sufficient to invoke the protection of the automatic stay. It does not, however, give a debtor the opportunity to revive what is in effect a nonexistent, extinguished contract. *In re Mimi's of Atlanta, Inc.,* 5 B.R. 623 (Bankr. N.D.Ga.1980), *aff'd and remanded* 11 B.R. 710 (N.D.Ga.1980).

 Federal regulations provide that a lease made by a public housing authority may be terminated for "serious or repeated violation of material terms of the lease such as failure to make payments due under the lease or to fulfill the tenant obligations set forth in § 966.4(f) or for other good cause" and for certain types of criminal activity. 24 C.F.R. § 966.4(1)(2). Here, the Movant terminated the lease in accordance with that regulation after the Debtor failed to make rental payments in two consecutive months. As indicated above, the Debtor does not contend that the Movant made any missteps under the applicable regulations or the lease itself.

 The contractual right of termination is separate and distinct from the statutory rights involved in a dispossessory proceeding, including the right to rely on eviction itself as the event of termination. Once the Housing Authority took the necessary steps to terminate the lease, the Debtor became a tenant at will, which entitled the Housing Authority to a writ of possession and her eviction. O.C.G.A. §§ 44–7–10; 44–7–50.

Because the Movant terminated the lease prior to the filing of the petition, the Debtor retains only a possessory interest in the premises. The Debtor must not have thought much of her argument that the lease had not been terminated, because she made no motion to assume it. *See* 11 U.S.C. § 365. Having been terminated, the lease could not have been assumed and was never property of the estate. The Movant seeks relief only to obtain possession of its property and not to enforce a money judgment against the Debtor. In the absence of bankruptcy, the

Movant would have a legal right to proceed with eviction. Thus, cause exists to lift the stay, unless section 525(a) bars such an action.

B. *Effect of 11 U.S.C. § 525(a).*

Section 525(a) provides in relevant part: [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, . . . or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, . . . a person that is or has been a debtor under this title . . . *solely* because such bankrupt or debtor is or has been a debtor under this title . . . , has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, has not paid a debt that is dischargeable in the case under this title. . . .

(Emphasis added.) The Debtor contends that the Housing Authority's attempt to evict her was and remains motivated by the fact she was insolvent prior to filing her bankruptcy case. The Movant denies the Debtor's contention. It has affirmatively refused her offer of payment of its prepetition claim and seeks merely to have the termination of its lease recognized and its property returned.

The Debtor offers nothing to prove that the Movant bases its attempt to evict her on her insolvency, other than an illogical argument. Her flawed syllogism is: (1) I am insolvent and could not pay my rent; (2) the Movant is attempting to evict me; therefore, (3) the Movant is trying to evict me because I am insolvent. It does not necessarily follow that merely because an insolvent person failed to pay rent, that failure to pay was due to insolvency. More importantly, it also does not necessarily follow from the fact that a landlord who terminates a lease and commences an eviction proceeding against a tenant who is insolvent and has failed to pay rent, does so solely on the basis of the tenant's insolvency rather than the non-payment of rent.

In addition to her argument concerning insolvency, the Debtor cites several cases in support of her position that the Housing Authority's effort to evict her violates section 525(a). *Curry v. Metropolitan Dade County (In re Curry)*, 148 B.R. 966 (S.D.Fla.1992); *Gibbs v. Housing Authority of City of New Haven*, 76 B.R. 257 (D.Conn.1983); *Housing Authority of City of Erie v. Szymecki (In re Szymecki)*, 87 B.R. 14 (Bankr.W.D.Penn. 1988); and *Sudler v. Chester Housing Authority (In re Sudler)*, 71 B.R. 780 (Bankr. E.D.Penn.1987). These cases are in large part distinguishable on the facts, but to the extent they are not distinguishable, this court declines to follow their reasoning.

*Sudler v. Chester Housing Authority (In re Sudler)*, 71 B.R. 780 (Bankr.E.D.Penn. 1987) is one of the earliest cases interpreting section 525(a). *Sudler* is inapposite because in that case, the court held that under Pennsylvania law, the lease had not been terminated. *Sudler*, 71 B.R. at 784. The lease here is governed by Georgia law, which permits the enforcement of contractual agreements concerning termination, and it was terminated prior to the filing of this case. *Housing Authority of City of Erie v. Szymecki (In re Szymecki)*, 87 B.R. 14 (Bankr. W.D.Penn.1988) also relied on *Sudler* and is equally uncompelling. *Gibbs v. Housing Authority of City of New Haven*, 76 B.R. 257 (D.Conn.1983) involved a civil rights claim based on an alleged violation of section 525(a). The bankruptcy court had previously held that the debtor's attempt to evict the debtor violated the automatic stay as well as section 525(a). The lease there had not been terminated. *Gibbs v. Housing Authority of City of New Haven (In re Gibbs)*, 9 B.R. 758 (Bankr.D.Conn.1981).

In *Curry v. Metropolitan Dade County (In re Curry)*, 148 B.R. 966 (S.D.Fla.1992), the court does not state whether the debtors' leases had been terminated prepetition, but they must not have been terminated. Otherwise, there would have been no point in stating that section 525(a) "controls over 11 U.S.C. § 365(b)(1)(A) . . . ," *Curry*, 148 B.R. at 972, because section 365 deals only with leases that have not been terminated. Thus, none of the cases cited by the Debtor holds that a terminated lease can be revived by section 525(a).

Even if the lease here had not been terminated, *Curry* and the other cases cited by the Debtor offer no sound basis for the result sought by the Debtor. The *Curry* court essentially held that failure to pay rent ceases to be cause for eviction of a public housing tenant when the obligation to pay prepetition rent is discharged. The other cases cited by the debtor can be read to stand for the same proposition.

The courts in those cases give no indication that the debtor need take any action to assume the unexpired lease, notwithstanding section 365(d)(1), which states that a lease of residential real estate not assumed by a Chapter 7 trustee within the applicable period is deemed rejected. Section 365(b) provides that in order to assume a lease, the trustee must cure any defaults and give adequate assurance of future performance.

The logic of cases like *Curry* is essentially that enforcing the requirement of section 365 to cure a default violates section 525(a) because it forces persons needing public assistance to pay a discharged debt to get that assistance. The Debtor carries this logic one step further by saying that a terminated lease ought to be revived, or at least not be considered terminated, if it was terminated because of nonpayment of rent and if the debtor was insolvent when the lease was terminated. These arguments are flawed both as to policy and as to statutory construction.

The basic policy issue is whether public housing tenants who fail to pay rent and file bankruptcy should be entitled to continue under the old leases without having to cure past defaults or should otherwise be entitled not to be evicted. That issue has nothing to do with bankruptcy law *per se*. It might seem to be a function of bankruptcy law because of the fresh start policy. On closer inspection, however, the issue concerns the terms and conditions on which someone should get public housing assistance. Those decisions can be made by the Department of Housing in its regulations or by the Congress. Nothing would prevent H.U.D. from in effect requiring a housing authority receiving federal aid to enter into new leases with tenants whose leases have been terminated for failure to pay rent and who file bankruptcy and obtain a discharge of the unpaid rent obligation.

These types of tenants do not lose their apartments because they filed bankruptcy, which is what section 525(a) tries to prevent; they lose them because H.U.D. and the housing laws permit housing authorities to demand that rent be paid to maintain a lease and to assume it after bankruptcy. A view that housing policy is shortsighted or incomplete is no mandate to torture section 525(a) to create a class of executory contracts not subject to section 365.

Section 525(a) bars a refusal to grant an interest in property only where the refusal is based *solely* on one of the situations described in that section. Nothing in section 525(a) forbids a governmental unit from availing itself of rights granted by other sections of the Bankruptcy Code. Thus, even if the lease in this case had not been terminated prepetition and the Debtor had sought to assume the lease under section 365 at the time the petition was filed, the Housing Authority could legally have refused to consent to assumption without a cure because section 365 grants it that right. Its refusal to permit assumption without a cure would not have been based *solely* on the factors prohibited by section 525(a). The *Curry* court said that section 525(a) prevails over section 365 because section 525(a) is more specific. That is a strained argument at best. Section 365 is about as specific as it can be about what it takes to assume a lease and section 525(a) does not even mention leases. Under the logic of *Curry*, no landlord could ever insist on a cure of prepetition defaults as the price of assumption because section 524 enjoins any act to collect a discharged debt.

This court's interpretation of section 525(a) also finds support in *Spruce Limited Partnership v. Lutz (In re Lutz)*, 82 B.R. 699 (Bankr.W.D.Penn.1988) and *Robinson v. Chicago Housing Authority (In re Robinson)*, 169 B.R. 171 (N.D.Ill.1994), although those cases reach the same result on slightly different grounds.

To the extent that the Debtor complains of possible denial of future housing benefits, she

presents no justiciable case or controversy. If the Debtor were to reapply for public housing and the Housing Authority denied her a lease solely because she had been insolvent or because she had filed a bankruptcy case, section 525 may be invoked to counter such discrimination.

Accordingly, it is herewith

ORDERED that the motion of the Housing Authority of the City of Decatur, Georgia is GRANTED. The automatic stay imposed by 11 U.S.C. § 362 is modified to permit the Housing Authority of the City of Decatur, Georgia to continue eviction proceedings against the Debtor.