CHARLES R. JONES, Judge.
_JjThe appellant, Tony Eason appeals the First City Court’s judgment granting the Housing Authority of New Orleans’ {hereinafter HANO) Rule for Possession. We reverse and render.
Mr. Eason leases a subsidized apartment from HANO, pursuant to the Office of Housing and Urban Development’s (HUD’s) program for funded public housing for indigent persons.
Under Mr. Eason’s residential lease, which he signed on October 19, 2004, his monthly rent is $254.00, which is below the market rents in the metropolitan area of New Orleans. His rent was due on the first day of each month.
On January 18, 2006, Mr. Eason signed a Memorandum of Understanding that expressed his intention to occupy the unit from HANO and revived the original October 19, 2004 lease agreement.
Due to Mr. Eason’s failure to pay his rent consistently in accordance with the lease agreement, HANO made efforts to counsel Mr. Eason by delaying the collection of his rent, and attempted to work out a repayment plan with Mr. Eason, but to no avail. HANO sought to dissolve its lease with Mr. Eason and regain possession over the premises pursuant to Louisiana law.
[2On September 4, 2007, HANO filed a Rule for Possession of Premises to evict Mr. Eason from the property[1] for nonpayment of rent from the period of January 1, 2007, through September 1, 2007, totaling $2,620.13 in late rent. A rule to show cause was scheduled to occur in First City Court on October 3, 2007.
However, on October 2, 2007, at approximately 5:00 p.m., Mr. Eason filed a Bankruptcy Petition in the United States Bankruptcy Court seeking relief under Chapter 7 of Title 11 of the United States Code. In his bankruptcy petition, Mr. Eason listed HANO as an “Unsecured Non-priority Claim.”
At the scheduled eviction hearing on October 3, 2007, at 10 a.m., Mr. Eason’s counsel served HANO with notice of Mr. Eason’s bankruptcy filing and an Answer. First City Court continued the matter for thirty (30) days due to the automatic stay, which was required due to the bankruptcy proceedings in federal court.
On October 12, 2007, the parties met to discuss the contents of Mr. Eason’s file and to discuss his options due to his bankruptcy petition; however, Mr. Eason himself did not attend the meeting. During the course of the meeting, it was decided that Mr. Eason was to deposit the post-bankruptcy rental payments into an escrow account with the First City Court.
However, on November 5, 2007, Mr. Ea-son served HANO with an Exception of *271 Lack of Jurisdiction and Amended Answer alleging that the automatic stay in the Bankruptcy Court divested the First City Court of jurisdiction. Since the automatic stay was still in effect, HANO informed the | ¡¡court that it would not file any subsequent documents regarding the matter in Bankruptcy Court.
When Mr. Eason’s counsel attempted to tender payment for post-petition rents in open court, HANO informed Mr. Eason that it was not the proper party to accept past due rental payments. The post-petition rental payments were then deposited into the registry of the court.
On November 9, 2007, HANO attended a pre-scheduled Meeting of the Creditors wherein Mr. Eason’s Bankruptcy Petition was flagged as an eligible Discharge.
On December 5, 2007, based on the information gathered at the Creditor Meeting and the expiration of sixty (60) days from the automatic stay, HANO filed its Motion to Lift Automatic Stay. The hearing on the motion was scheduled in the Bankruptcy Court for January 9, 2008.
On December 19, 2007, Mr. Eason filed an Objection to HANO’s Motion to Lift Automatic Stay.
At the hearing on the Motion to Lift Automatic Stay on January 9, 2008, HANO presented evidence of its efforts to offer Mr. Eason financial counseling, the opportunity to schedule a payment plan for past due rents, and notices informing Mr. Eason that his failure to pay the past due rents would result in the termination of the lease agreement.
At the same hearing, Mr. Eason submitted receipts showing payment of post-petition rent, and argued that since the pre-petition rent was dischargeable in bankruptcy that the post-petition rent is current and HANO is owed nothing. Mr. Eason argued that HANO could not pursue an eviction against him.
|4After the hearing, the Bankruptcy Court granted HANO’s Motion to Lift Stay, and opined, “that rents paid post-petition are too little too late.” The Bankruptcy Court’s order also allowed HANO to proceed with the eviction hearing which was scheduled for January 10, 2008.
On January 9, 2008, at approximately 7 p.m., Mr. Eason filed an Appeal and Motion for Stay of the Bankruptcy Court’s order. The motion also requested that the Bankruptcy Court continue the eviction hearing until January 17, 2008. However, the Appeal and Motion for Stay was denied the following day.
On January 14, 2008, Mr. Eason then filed an Emergency Motion for Stay Pending Appeal with the Bankruptcy Court. HANO filed an opposition to Mr. Eason’s emergency motion and continued the eviction hearing until February 7, 2008.
The Emergency Motion for Stay Pending Appeal was denied by the U.S. District Court on January 31, 2008. Again, the Bankruptcy Court’s order allowed HANO to proceed with the eviction hearing on February 7, 2008, as scheduled.
On February 6, 2008, Mr. Eason filed a Motion to Reconsider Emergency Motion for Stay Pending Appeal. Again, the Bankruptcy Court denied the motion and ordered HANO to proceed with the eviction hearing.
The eviction hearing proceeded as scheduled on February 7, 2008, at which time the First City Court heard testimony and evidence presented by the parties, as well as the orders rendered by the Bankruptcy Court. The First City Court ruled in HANO’s favor allowing it to take possession of the property. On the same date, Mr. Eason filed a motion for appeal
*272 UOn February 8, 2008, HANO filed an objection to Mr. Eason’s motion for appeal, and a motion for contempt and sanctions against Mr. Eason’s counsel for alleged unprofessional conduct in court.
About a month later on March 6, 2008, Mr. Eason filed a reply to HANO’s objection of his motion for appeal, in addition to a motion for contempt and sanctions against HANO’s counsel.
The following day, the Bankruptcy Court ordered the discharge of Mr. Ea-son’s debt under Chapter 7 of the Bankruptcy Code.
On March 11, 2008, Mr. Eason filed a motion to dismiss his appeal of the Bankruptcy Court order granting HANO’s motion to lift stay alleging that the issue was moot, and that the court lacked jurisdiction.
Or March 12, 2008, the First City Court refused to consider HANO’s objection to Mr. Eason’s motion for appeal stating that the court was divested of jurisdiction. The First City Court also denied HANO’s motion for contempt, and refused to address Mr. Eason’s motion for contempt because it was not properly set for hearing. This appeal followed.
In his sole assignment of error, Mr. Eason argues that the First City Court erred in granting HANO’s rule for possession.
DISCUSSION
As reiterated by this Court in Abrimson v. Ethel Kidd Real Estate, 2004-2085, pp. 3-4 (La.App. 4 Cir. 1/18/06), 926 So.2d 568, 569-570:
[AJcourt of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993), citing, Rosell v. ESCO, 549 So.2d 840 (La.1989). Questions of law are resolved by determining whether the trial judge was legally correct or legally | [¡incorrect. Delacroix Corporation v. Perez, 98-2447, p. 4 (La.App. 4 Cir. 11/8/00), 794 So.2d 862, 865, citing Palmer v. Blue Water Marine Catering, Inc., 95-342 (La.App. 5 Cir. 10/18/95), 663 So.2d 780.
The provisions of La. C.C.P 4701 et seq. specifically set out the procedure by which a landlord may seek the eviction of a tenant. Eviction procedure of the Code of Civil Procedure is designed to expedite as quickly as possible determination of right of lessor to be restored to possession of premises. Edenborn Partners Ltd. Partnership v. Korndorffer, 94-891 (La.App. 5 Cir. 3/1/95), 652 So.2d [1027,] 1032. When lessee’s right of occupancy ceases for any reason, lessor is entitled to utilize summary eviction proceedings to obtain possession of the premises. New Orleans Hat Attack, Inc. v. New York Life Ins. Co., 1995-0055 (La.App 4 Cir. 11/30/95), 665 So.2d 1186.
Although Mr. Eason’s assignment of error, as presented, is a bit misleading, the real issue before this Court is whether a public housing tenant can assert an affirmative defense under Bankruptcy law to prevent his eviction in a state court proceeding.
However, before this Court addresses the merits of the instant appeal, a thorough explanation of the applicable statutes must be discussed.
The Court’s review of the legislative and jurisprudential history of 11 U.S.C. § 525(a), was fully discussed in Stoltz v. Brattleboro Housing Authority, 315 F.3d 80 (2d Cir.2002). The Second Circuit of the United States Court of Appeals observed that § 525(a) evolved from the U.S. *273 Supreme Court case Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). Id., at 87. In its discussion of the codification of § 525(a), the Second Circuit, in Stoltz, noted that the Perez case was:
[A] seminal bankruptcy case in which the Supreme Court struck down a state statute that withheld driving privileges from debtors who failed to satisfy motor-vehicle-related tort judgments against them, even if the | judgments were discharged under bankruptcy law. The Supreme Court used the Supremacy Clause to invalidate the state statute, finding that it discriminated against debtors in a manner that frustrated and was contrary to the fresh start principles of the Bankruptcy Act. Id. at 649-52, 91 S.Ct. at 1711-13. Congress thereafter signaled its approval of the Perez holding by enacting section 525(a), which prohibits bankruptcy-based discrimination by governmental units against debtors. Section 525(a) states, in relevant part, that:
[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
11 U.S.C. § 525(a) (2001) (emphasis added). Notably, the text of Section 525(a) does not limit its scope to the facts presented in Perez. Section 525(a) applies to any governmental unit, not just a State agency or department; it covers not only licenses, but also permits, charters, franchises, and other similar grants; and it applies regardless of whether the governmental unit involved is the creditor whom the debtor failed to pay, or is simply a grantor conditioning a grant on the debtor’s satisfaction of a discharged debt owed to a third party.
[[Image here]]
In the nearly twenty-four years that have passed since its enactment, section 525(a) has been interpreted by the courts to protect debtors from discrimination in a wide variety of contexts, including a debtor’s right to |soperate a motor vehicle, see, e.g., In re Adler, 47 B.R. 554 (Bankr.S.D.Fla.1985) (holding section 525(a) prohibits enforcement of statute that allows state department of motor vehicles to suspend licenses and registrations of judgment debtors, even if motor-vehicle-related judgments against them were discharged in bankruptcy); ability to engage in a trade or business, see, e.g., In re Walker, 927 F.2d 1138 (10th Cir.1991) (finding statute, which automatically revokes real estate license of any licensee for whom payment was made from real estate recovery fund, contravenes section 525(a)); and ability to obtain essential goods and services, In re Heath, 3 B.R. 351 (Bankr.N.D.Ill.1980) (holding state university’s refusal to release student- *274 debtor’s transcript until he paid prepetition debt in full violated section 525(a)).
Despite more than twenty years of judicial consideration, however, the scope of Section 525(a)’s protection in the context of public housing is still unsettled. No circuit court has yet spoken on the issue, and the bankruptcy courts and district courts that have done so have done so inharmoni-ously. It is undisputed that a public housing authority is a governmental unit within the meaning of 525(a), FN3 See 11 U.S.C. § 101(27); see also In re Robinson, 169 B.R. 171, 176 (N.D.Ill.1994), In re Szymecki, 87 B.R. 14, 16 (Bankr.W.D.Pa.1988).
Stoltz, 315 F.3d at 87-88. [Emphasis added]
In the instant matter, Mr. Eason argues that since his pre-petition rents were discharged in the bankruptcy proceedings and that his post-petition rents were placed in escrow, HANO is not owed any pre-petition rents for the unit and that he is entitled to remain on the premises. Additionally, he asserts that since HANO sought to evict him solely based on his non-payment of pre-petition rents, that HANO’s actions are discriminatory and are expressly prohibited under § 525(a).
In support of this contention Mr. Eason cites FCC v. NextWave Personal Communications, 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003), in which the U.S. Supreme Court ruled that the debtor’s (Nex-twave’s) failure to pay its debt, which was dischargeable in | ^bankruptcy, to the FCC was the proximate cause of the cancellation of the debtor’s licenses for broadband personal communications services. Id. at 301-302, 123 S.Ct. 832. As a result, the Supreme Court held that the FCC was prohibited from revoking the licenses pursuant to section 525(a). Id. In its decision, the Supreme Court explained that “[w]hen a statute refers to the failure to pay a debt as the sole cause of cancellation (“solely because”), it cannot reasonably be understood to include, among the other causes[2] whose presence can preclude the application of the prohibition, the governmental unit’s motive in effecting the cancellation.” Id. at 301,123 S.Ct. 832.
Mr. Eason notes that the United States Supreme Court has not ruled on the specific issue of whether § 525(a) bars a public housing authority from evicting a tenant for failure to pay pre-petition rent. He notes that only one federal circuit court of appeal has addressed the specific issue. The ease to which he refers is a case mentioned earlier in our discussion, Stoltz v. Brattleboro Housing Authority, 315 F.3d 80 (2d Cir.2002).
In Stoltz, a creditor-public housing authority moved for relief from stay, in order to evict a Chapter 7 debtor from her publicly subsidized apartment based on her nonpayment of discharged pre-petition rent. The United States Bankruptcy Court for the District of Vermont, granted the motion, and the debtor appealed. The district court reversed and reinstated the automatic stay. The public housing creditor appealed.
Addressing issues of apparent first impression among the circuits, the Court of Appeal, held that: (1) a public housing lease is a grant “similar” to a “license, | inpermit, charter, [or] franchise,” within the meaning of section of the Bankruptcy Code that protects debtors from discrimination by governmental units; Id., p. 91, (2) debtor’s eviction was “solely because” *275 of discharged pre-petition rent, within the meaning of the antidiscrimination provision; Id., p. 93, and (3) section of the Code setting forth the antidiscrimination provision is more specific than section of the Code providing that landlords in general may evict debtor-tenants for nonpayment of discharged pre-petition rent, and so, to the extent these sections conflict, the former “trumps” the latter. Id.
HANO asserts that the lease it terminated due to Mr. Eason’s failure to pay rent renders § 525 inapplicable to the instant case. Quite simply they assert that the eviction was not sought in retaliation; rather it was done in response to Mr. Eason violating the terms of the lease. Therefore, HANO maintains that it followed state law proceedings to evict a Louisiana tenant who violated a Louisiana lease.
HANO also argues that pursuant to La. C.C. art. 2704, titled, Nonpayment of rent, that “[i]f the lessee fails to pay the rent when due, the lessor may, in accordance with the provisions of the Title “Conventional Obligations or Contracts,” dissolve the lease and may regain possession in the manner provided by law.”
HANO also distinguishes the NextWave and Stoltz cases in pointing out that Nex-tWave concerned a license rather than a lease agreement. It also asserts that Stoltz is distinguishable because it concerns a discriminatory eviction based solely on pre-petition rent previously discharged.
Nevertheless, HANO argues that there are no Federal or Louisiana laws which would allow a tenant to live free for two years, with the exception of cases |nin which a discriminatory or retaliatory eviction occurred. HANO points out that it went out of its way to assist Mr. Eason in paying rent and allowed extensions of his occupancy. However, instead of making a good faith effort to pay his rent, Mr. Ea-son filed his bankruptcy claim, which delayed the eviction proceedings for eight (8) months. Essentially, HANO concludes that Mr. Eason merely used the bankruptcy to prevent his eviction.
However, we disagree with HANO’s assessment once the following facts are considered: (1) Mr. Eason filed his bankruptcy proceedings when he was served with HANO’s Rule for Possession for the leased premises; (2) the pendency of the bankruptcy procedure stayed the First City Court eviction proceeding, as required under 42 U.S.C. § 362; (3) the Bankruptcy Court granted Mr. Eason’s relief under Chapter 7 under the U.S. Bankruptcy Code; (4) Mr. Eason’s bankruptcy extinguished all of his pre-petition debt, including the pre-petition rent of approximately $2,620.13 owed to HANO on or about September 2007; (5) Mr. Eason put the post-petition rent into an escrow account; and finally (6) the applicable jurisprudence, as stated in Stoltz, unambiguously sets forth that entities, such as HANO, are deemed governmental entities — and prohibits evictions solely on the basis of non-payment of rent under § 525(a).
As explained in Meyer & Associates, Inc. v. Coushatta Tribe of Louisiana, 2007-2256 (La.9/23/08), 992 So.2d 446:
It is a well-settled principle of statutory construction that absent clear evidence of a contrary legislative intention, a statute should be interpreted according to its plain language. Cleco Evangeline, LLC v. Louisiana Tax Commission, 01-2162, p. 5 (La.4/3/02), 813 So.2d 351, 354. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent [ 12of the legislature. La. C.C. art. 9. The meaning and intent *276 of a law is determined by a consideration of the law in its entirety, and the court’s construction should be consistent with the express terms of law and with the obvious intent of the lawmaker in enacting it. Bridges v. Autozone Properties, Inc., 04-0814 (La.3/24/05), 900 So.2d 784, 799. The best evidence of the legislature’s intent is the wording of the statute. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 800.
Id., 2007-2256, p. 7-8, 992 So.2d at 452. Furthermore, given the explanations set forth in NextWave and Stoltz, regarding the construction and application § 525(a), we are inclined to agree with Mr. Eason’s argument.
An “[e]viction is a summary action which involves the single issue of whether the owner is entitled to possession of the premises. Mascaro v. Hudson, 496 So.2d 428, 429 (La.App. 4 Cir.1986). The tenant or occupant cannot defeat the owner’s right to summary eviction by injecting foreign issues into the case in an attempt to convert it into an ordinary proceeding. Id. The only affirmative relief that can be granted is the right to remain in the premises.” Capone v. Kenny, 646 So.2d 510, 512 (La.App. 4 Cir. 11/30/94). Based on Mr. Eason’s affirmative defense of his discharge in bankruptcy, given we find that the only reason elicited by HANO is his failure to pay pre-petition rent, we find that HANO’s action fits the type of discriminatory conduct expressly prohibited by § 525(a).
We are satisfied that Mr. Eason has shown that the First City Court erred in granting HANO’s Rule for Possession and order to vacate. We can only arrive at this conclusion by giving strict application of the legislative and jurisprudential history of § 525. Therefore, we conclude that Mr. Eason has a right to remain in the leased premises at this time.
However, this conclusion does not relieve Mr. Eason from paying all post-petition rent. Although we have concluded that Mr. Eason cannot be evicted from 113the unit[3] based upon the protections afforded to him under § 525(a), and further noting that Mr. Eason’s pre-petition rent has been discharged through bankruptcy, he must still fulfill all other obligations under his lease agreement, prospectively, from the date of his discharge in bankruptcy. The post-petition rental payments deposited into the court registry by Mr. Ea-son are the property of HANO, and HANO is ordered to collect the money held in escrow in order to get Mr. Eason’s account up to date.
We note that HANO has not waived the right to evict Mr. Eason on some other basis, besides non-payment of rent, constituting a breach of his lease agreement. However, these issues are hot before us at this time.
Our review of the record reveals that Mr. Eason attempted to pay post-petition rents, but these payments were not accepted by HANO and are currently held in the court’s registry. In order to cure the defect, and comply with the non-discriminatory provisions as a governmental entity, HANO must accept the post-petition rent payments that are currently held in escrow, to allow Mr. Eason the “fresh start” that his Chapter 7 bankruptcy debt discharge has granted to him.
DECREE
The First City Court erred in granting HANO’s Rule of Possession and order to vacate directed to Mr. Eason. The judgment of the First City Court is reversed. Additionally, HANO is ordered to claim all *277 post-petition rent payments deposited by Mr. Eason that are currently held in the registry of the court.
REVERSED AND RENDERED.
MURRAY, J., concurs with reasons.
MCKAY, J., dissents with reasons.

. The property was specified as being located at "1205 Bienville Street, Apartment D.”

. An example of the inapplicability of § 525(a) is much clearer, for instance, if Mr. Eason had violated some other terms of the subsidized lease agreement, other than (or in addition to) non-payment of rent.

. As of the date of this opinion, it is unclear whether Mr. Eason has vacated the premises.