In the Matter of Dan L. WEY, Debtor.

Appeal of Robert L. SULLIVAN, Trustee in Bankruptcy, Plaintiff–Appellant,

v.

William W. WILLOCK, Jr. and Adelaide I. Willock, Defendants–Appellees.

No. 87–2850.

United States Court of Appeals, Seventh Circuit.

Argued April 21, 1988.

Decided July 29, 1988.

As Amended Aug. 17, 1988.

George L. Chesley, Chesley Wilson & Prall, Bloomington, Ill., for plaintiff-appellant.

D. Scott Hargadon, Bell Boyd & Lloyd, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

KANNE, Circuit Judge.

Dan Wey forfeited his down payment on a Virgin Island hotel when he failed to pay the balance under the terms of a real estate contract. His trustee in bankruptcy sought to have the down payment set aside, characterizing it as a voidable preference under 11 U.S.C. § 547 or as a fraudulent transfer under 11 U.S.C. § 548. Finding that no "transfer" occurred, as required by these statutes, the bankruptcy court dismissed the complaint. The district court found that a transfer had occurred but affirmed the dismissal because the antecedent debt requirement of § 547(b) had not been satisfied, 78 BR 892. We find that no transfer occurred and affirm the dismissal of the complaint.

## I.

The essential facts in this case are not disputed. Dan Wey contracted to purchase the Limetree Beach Hotel on the island of St. Thomas in the U.S. Virgin Islands from William and Adelaide Willock for $5.2 million. Under the terms of the contract, Wey was to pay $520,000.00 as a 10% down payment on April 10, 1984, and the remaining balance of $4.6 million on September 30, 1984. The contract further provided that the down payment would be forfeited in the event of Wey's default.[1]

Wey could not come up with the $4.6 million final payment needed for the purchase of the hotel and consequently forfeited the down payment. On October 29, 1984, an involuntary Chapter 7 bankruptcy petition was filed against Wey and he was adjudicated as bankrupt.

Robert Sullivan, Wey's trustee in bankruptcy, brought an adversary proceeding in bankruptcy court against the Willocks to set aside the contract forfeiture and their retention of the down payment.

The trustee argued that the forfeiture of the $520,000.00 down payment was a "transfer" for purposes of § 101(48) of the Bankruptcy Code.[2] Thus, he sought to characterize it as a voidable preference under 11 U.S.C. § 547 or as a fraudulent transfer under § 548. Cross motions for summary judgment were filed. The bankruptcy court first denied the trustee's motion and then dismissed the complaint, treating the defendants' request as a motion to dismiss. The bankruptcy court ruled that no rights were transferred when Wey defaulted on the contract and thus the transfer element required by both § 547 and § 548 had not been met.

The trustee then appealed to the United States District Court for the Central District of Illinois. Judge Mills affirmed the bankruptcy court's dismissal—although on different grounds. The district court determined that the contract forfeiture was a transfer, but ruled that the down payment was not avoidable because there was no "antecedent debt" as required by 11 U.S.C.

1. Specifically, the contract read, in pertinent part:

    In the event ... purchaser shall default under the terms of this contract, this contract shall be terminated and be deemed null and void, and any and all payments theretofore made by the purchaser on account of the purchase price, shall be forfeited....

2. This provision has been renumbered 11 U.S.C. § 101(50).

§ 547(b). The district court further found that the forfeiture of the down payment constituted consideration of reasonably equivalent value and therefore the trustee was also unsuccessful as to his § 548 claim.

The trustee doggedly appeals to this court, still seeking relief under §§ 547 and 548 of the Bankruptcy Code. We have jurisdiction pursuant to 28 U.S.C. § 158(d). The trustee asserts that because the Willocks ultimately had $520,000.00 more than they would have received in Chapter 7 bankruptcy, the forfeiture of the down payment must be viewed as a transfer and must be set aside pursuant to either 11 U.S.C. § 547 or § 548.[3]

The trustee's § 547 claim contends that a transfer did occur and that Wey's September 30, 1984 default occurred within ninety days of the filing of the October 30, 1984, bankruptcy petition. Therefore, he argues that the down payment constituted a preferential transfer and may be avoided.

The trustee's § 548 fraudulent transfer claim asserts that he received less than a reasonably equivalent value in exchange for the forfeiture of the down payment.[4]

The defendants steadfastly maintain that both of the trustee's claims fail for lack of a transfer.

## II. TRANSFER

A transfer is a necessary element for the relief the trustee seeks under both 11 U.S. C. § 547 and § 548.[5] Because all elements of a preference must be present for a transaction to be avoidable by a trustee under the Bankruptcy Code, *In re White River Corp.*, 50 B.R. 403, 406 (Bankr.D. Colo.1985); *In re Mobley*, 15 B.R. 573, 575 (Bankr.S.D. Ohio 1981), we must focus our initial inquiry on whether or not Wey's down payment is a transfer. The term

---

3. The trustee based his complaint on the fact that the Willocks ended up with cash and property totalling $5.7 million rather than the $5.2 million they would have received if Wey had not defaulted.

4. The trustee contends that Wey received $520,-000.00 in equity in the hotel at the time of his down payment. Similarly, the Willocks exchanged $520,000.00 in equity in the hotel for the right to receive $4.6 million when the contract matured. If the contract would have been performed, a $5.2 million hotel would have changed hands for $5.2 million. However, the contract was not performed and the Willocks ended up with a $5.2 million hotel in addition to Wey's $520,000.00 down payment and the cancellation of their obligation to sell the hotel.

5. 11 U.S.C. § 547(b) provides:
(b) Except as provided in subsection (c) of this section, the trustee may avoid any *transfer* of an interest of the debtor in property—
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such *transfer* was made;
  (3) made while the debtor was insolvent;
  (4) made—
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such *transfer* was an insider;
  (5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title [11 USCS §§ 701 *et seq.*];
(B) the *transfer* had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 USCS §§ 101 *et seq.*]. (emphasis added).
11 U.S.C. § 548(a) provides:
(a) the trustee may avoid any *transfer* of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
  (1) made such *transfer* or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such *transfer* was made or such obligation was incurred, indebted; or
  (2)(A) received less than a reasonably equivalent value in exchange for such *transfer* or obligation; and
(B)(i) was insolvent on the date that such *transfer* was made or such obligation was incurred, or became insolvent as a result of such *transfer* or obligation;
(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. (emphasis added).

"transfer" is defined by § 101(50) of the Bankruptcy Code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

■ The bankruptcy trustee insists that the forfeiture of the $520,000.00 down payment amounted to a transfer because it was in satisfaction of Willocks' claim for breach of an executory contract. Consequently, Wey's trustee tells us, the sum was avoidable as either a preference under 11 U.S.C. § 547 or as a fraudulent transfer under 11 U.S.C. § 548 and Wey's estate is entitled to the return of the down payment. However, under both contract law and bankruptcy law, the trustee's theory must fail.[6]

In reviewing the trustee's complaint, the bankruptcy court found that there was no transfer. Applying the framework set forth in *In re Commodity Merchants*, 538 F.2d 1260 (7th Cir.1976), the court found, as a matter of law, that as of the date of the contract's expiration, Wey possessed *no rights* which he could transfer. The court correctly reasoned that the contract expired by its own terms when the closing did not occur on September 30, 1984.[7] Possession of expired rights is the equivalent of the possession of no rights. When a termination is pursuant to the terms of a contract, there is no transfer. *Commodity Merchants*, 538 F.2d at 1063. In *Commodity Merchants*, we concluded that "[the seller] did not reacquire any rights from [the purchaser] upon cancellation, for [the seller] had reserved the option of terminating the contracts if [the purchaser's] financial condition deteriorated." *Id.* at 1263.

The trustee seeks to distinguish *Commodity Merchants* by arguing that Wey was a valuable vendee—not the holder of an expired commodities contract like the debtor in *Commodity Merchants*. What Wey possessed after he tendered the down payment was an equitable interest in real estate. When he breached the contract, he lost that equity interest, as well as his down payment and both his rights and liabilities under the contract.

Since the Wey/Willock contract specifically stated that it terminated and became null and void upon Wey's default, the bankruptcy court correctly held "the Willocks did not receive any right at the default that they did not already have at the time of the signing of the contract." *Order*, No. 384–01536 at 3 (Bankr.C.D.Ill. Dec. 11, 1985). In making this ruling, the court determined that the only transfer was Wey's actual tendering of the down payment[8]—an event which occurred well before the 90-day period of the statute.

The district court agreed with the bankruptcy court's result, but disagreed with the bankruptcy court with respect to the transfer issue. The district court accepted the trustee's argument that there was a "transfer" as required by the Bankruptcy Code, finding when Wey breached the contract by failing to pay the $4.6 million balance on the hotel, he effectively transferred the down payment to the Willocks.

When Wey defaulted on the contract, the Willocks legitimately benefited from a contract which both parties had entered voluntarily. While we agree that summary judgment for the defendants was appropriate, what actually occurred when Wey defaulted was an extinguishment of his equity interest in the hotel, not a transfer. No transfer occurred and consequently the

---

6. Because there was no valid Title 11 bankruptcy claim, the bankruptcy court was without jurisdiction to address any state law contract claim. 28 U.S.C. § 157 (1984); *Cf. In re Pierce*, 44 B.R. 601, CCH Bankr.L.Rep. ¶ 70, 153 (D.Colo.1984).

7. The Wey/Willock contract contained language which stated that time was of the essence, and that in the event of default, the contract would be terminated and null and void. (Agreement § 6 and Addendum § 2).

8. The down payment was made in two installments of $260,000.00 each. The first installment was made on April 10, 1984–203 days before the petition was filed. The second was made on April 30, 1984—183 days before the filing of the petition.

trustee failed to state a claim upon which relief could be granted.

## III. ANTECEDENT DEBT

Because the transfer element of both § 547 and § 548 was not satisfied, we do not reach the underlying issue of whether or not there was an "antecedent debt" for purposes of § 547(b)(2). Under § 547(b), a debtor's transfer may be avoided "on account of an antecedent debt owed by the debtor before such transfer was made."

 However, assuming arguendo, that we were to resolve this dispute, we agree with the district court and find that the down payment did not meet the antecedent debt requirement of 11 U.S.C. § 547(b)(2). In reaching its conclusion, the district court found first that there was a transfer, stating that "a debt is contracted when a debtor becomes legally obligated to pay." *Barash v. Public Finance Corp.*, 658 F.2d 504, 510 (7th Cir.1981). *See also In re Emerald Oil Co.*, 695 F.2d 833, 837 (5th Cir.1983). Further, "a debt arises under a contract only after the creditor has tendered performance." *In re Gold Coast Seed Co.*, 751 F.2d 1118, 1119 (9th Cir.1985).

Here, the district court properly found that Wey was not legally obligated to pay the contract until the closing date, and did not incur the debt until he forfeited the down payment by breaching the contract. Therefore, even if the trustee were to survive the fatal lack of a transfer, the lack of an antecedent debt would prevent his recovery.

## IV. EQUIVALENCY OF VALUE

 As with the issue of antecedent debt, the trustee's § 548 fraudulent transfer claim fails because no transfer has been established. It additionally fails because the debtor did not receive "less than a reasonably equivalent value" under § 548(a)(2) in return for the $520,000.00 he forfeited. The district court determined that the forgiveness of Wey's $4.6 million debt by the forfeiture of the $520,000.00

down payment was "reasonably equivalent value" and consequently precluded the trustee from prevailing on his § 548 claim.

The trustee argues that remand is necessary to ascertain whether the $520,000.00 down payment satisfies the Willocks' damage claim of "reasonably equivalent value" under § 548. He requests a trial in order that the amount of liquidated damages may be balanced against the amount of money the Willocks lost.

The trustee's argument flies in the face of his motion for summary judgment in which he told the district court that no genuine issues of material fact remained.[9] The trustee counters by saying that the genesis of his request for a remand is in the district court's finding of a transfer. Because of that ruling, the trustee asserts that a factual question arose as to what actually changed hands, and that the case must be remanded. However, as with the trustee's other collateral claims, this argument fails because the transfer element was not satisfied.

## V. CONCLUSION

Wey's forfeiture did not amount to a transfer. Furthermore, even if there was a transfer, the trustee's allegations of antecedent debt and less than reasonably equivalent value fail. Consequently, the dismissal of the trustee's petition for failing to state a claim upon which relief could be granted is AFFIRMED.

---

**9.** The trustee's motion for summary judgment stated that "[t]he facts in this proceeding insofar as they are relevant and material are not in dispute."