**In re COAST CITIES TRUCK SALES, INC., Debtor.**

**COAST CITIES TRUCK SALES, INC., Plaintiff,**

v.

**NAVISTAR INTERNATIONAL TRANSPORTATION COMPANY, Defendant.**

**Civ. No. 92–886.**

**Bankruptcy No. 92–33121.**

United States District Court, D. New Jersey.

Dec. 2, 1992.

Timothy P. Neumann, Wood, Broege, Neumann & Fischer, Manasquan, N.J., for plaintiff.

Erza D. Rosenberg, Katzenbach, Gildea & Rudner, Lawrenceville, N.J., for defendant.

GARRETT E. BROWN, Jr. District Judge.

## I. INTRODUCTION

Defendant Navistar International Transportation Company ("Navistar") appeals from the preliminary injunction order of the bankruptcy court requiring Navistar to comply with the terms of an allegedly terminated dealership agreement entered into with Coast Cities Truck Sales, Inc. ("Coast Cities"). For the reasons set forth herein, the decision below is hereby reversed.

## II. BACKGROUND

Coast Cities has been a dealer of trucks and parts manufactured by defendant Navistar for several years. On or about November 9, 1987, the parties entered into a formal Dealer Sales/Maintenance Agreement (the "Dealer Agreement") to memorialize their business relationship. The Dealer Agreement provided, however, that Navistar could terminate the contract in the event Coast Cities failed to pay a debt due Navistar or one of its affiliated companies. Following the Dealer Agreement's execution, Coast Cities was often in arrears on its payment obligations to Navistar as well as Navistar affiliates. Moreover, between April of 1989 and April of 1991, Navistar regularly returned Coast Cities' checks for insufficient funds, and in April of 1991, Navistar Financial Corporation ("Navistar Financial")—an affiliate of Navistar—suspended both retail and lease financing to Coast Cities and thereafter only accepted certified funds. Consequently, on May 20, 1991, Navistar notified Coast Cities that it was in breach of the Dealer Agreement and gave Coast Cities thirty days in which to cure the deficiencies. Navistar further warned that failure to do so would result in the termination of the Dealer Agreement in accordance with its provisions. On June 10, 1991, Coast Cities responded by stating that 120 to 180 days were needed to remedy the deficiencies. Thereafter, on June 21, 1991, Navistar extended the cure period an additional thirty days. On July 15, 1991, Coast Cities again wrote to Navistar and proposed to resolve its open account balance. Subsequent discussions between the parties resulted in a meeting held on September 13, 1991, where it was agreed that Navistar would extend the cure period until October 20, 1991.

On October 22, 1991, Navistar Financial informed Coast Cities that its past due obligations had substantially increased and that it would resort to legal remedies to collect the debt. In response, Coast Cities announced that it had retained an accounting firm to determine its business viability and that a formal report was to be completed by November 25, 1991. Upon receipt of this information, Navistar informed Coast Cities that the period to remedy the breach would again be extended, but conditioned the extension on Coast Cities' agreement to submit monthly financial and operating statements as well as devise a specific business plan which was to be forwarded to Navistar by December 1, 1991. Navistar did not receive Coast Cities' proposal until December 13, 1991, and after reviewing it, telephoned Coast Cities on January 3, 1991 to discuss the need for further details.

On January 13, 1992, Navistar learned that a tax lien had been filed against Coast Cities and that Coast Cities' floor plan financier, Associates Commercial Corporation, had suspended Coast Cities' financing arrangement. By February 21, 1991, Navistar had not heard a response from Coast Cities with respect to the January 3, 1992 request and, consequently, notified Coast Cities by certified mail that effective April 27, 1992, it was terminating the Dealer Agreement. In response, Coast Cities filed suit in this Court on February 25, 1992,[1]

1. Plaintiff filed the complaint on February 25, 1992. The summons was filed two days later, and Navistar was served on March 12, 1992. Therefore, Coast Cities' suggestion that Navistar

seeking to enjoin the termination. In April of 1992, this Court issued an Order to show cause for Navistar to demonstrate why the termination of the Dealer Agreement should not be enjoined. Thereafter, on April 20, 1992, this Court scheduled a plenary hearing to begin on April 28, 1992, which was subsequently adjourned until May 13, 1992. At the initial scheduling hearing, Navistar unilaterally vowed that it would not take any steps to effectuate the termination pending a decision by the Court on Coast Cities' application for an injunction.

On May 14, 1992, this Court denied plaintiff's motion to enjoin the termination of the Dealer Agreement. However, before the Court signed the May 15, 1992 Order memorializing the termination of the Dealer Agreement—effective May 14, 1992— Coast Cities filed a petition for Bankruptcy under Chapter 11 of the United States Code. Thereafter, on June 22, 1992, Coast Cities filed an adversary proceeding against Navistar for declaratory relief, seeking a declaration that the Dealer Agreement was an existing executory contract assumable under 11 U.S.C. § 365 or, in the alternative, the recovery of the Dealer Agreement under 11 U.S.C. § 548 as a "fraudulent transfer." On July 6, 1992, the bankruptcy court issued temporary restraints against Navistar, compelling the defendant to process orders placed by Coast Cities. The restraints were to remain in effect pending a final hearing on the issuance of a preliminary injunction, which was subsequently granted by the bankruptcy court on September 2, 1992, requiring Navistar to comply with the Dealer Agreement. Upon the bankruptcy court's denial of defendant's application for a stay of the preliminary injunction pending appeal, defendant appealed to this Court pursuant to Bankruptcy Rule 8005. On September 8, 1992, this Court denied Navistar's motion for a stay pending appeal. On September 30, 1992, this Court heard oral argument on the merits of the appeal. For the reasons set forth below,

the Order enjoining Navistar's termination of the Dealer Agreement is hereby reversed.

## III. DISCUSSION

The grant of injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988) (citing *United States v. City of Philadelphia*, 644 F.2d 187, 191 n. 1 (3d Cir.1980)). When deciding such a motion, a court must consider four factors: (1) the moving party's likelihood of success on the merits; (2) the probability of irreparable injury to the moving party in the absence of relief; (3) the potential harm to the non-moving party; and, if applicable, (4) the public interest. *Fechter v. HMW Indus., Inc.*, 879 F.2d 1111, 1116 (3d Cir.1989) (citing *United States v. Price*, 688 F.2d 204, 211 (3d Cir. 1982)). "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir.1990) (citing *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987)).

With respect to the first consideration, defendant Navistar asserts that the bankruptcy court erred as a matter of law in finding that Coast Cities would likely prevail on the merits of the case, maintaining that (1) the Dealer Agreement may not be assumed or revived pursuant to 11 U.S.C. § 365 since it was effectively terminated prior to Coast Cities' filing of a petition in bankruptcy, and (2) the termination of the Agreement does not qualify as a voidable "fraudulent conveyance" within the scope of 11 U.S.C. § 548. Although Coast Cities argued these points in the alternative—the first premised on the finding of a valid contact and the second on the finding of a valid pre-petition termination—the court below did not announce which line of reasoning it was adopting in support of its

terminated the Agreement in retaliation for the filing of the complaint is groundless, considering that Navistar did not have notice of the

lawsuit until after it sent the letter terminating the Dealer Agreement.

ruling. Therefore, this Court finds it necessary to address both issues.

## A. SECTION 365

■ Pursuant to section 365 of the Bankruptcy Code, subject to the court's approval, the trustee of a debtor may assume or reject any executory contract of the debtor. *See* 11 U.S.C. § 365(a) (Supp. 1992). As plaintiff concedes, however, executory contracts cannot be assumed pursuant to § 365 *if* they are validly terminated prior to a debtor's filing of a bankruptcy petition. *See Counties Contracting & Constr. Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054, 1061 (3d Cir.1988) ("A contract may not be assumed under § 365 if it has already expired according to its terms." (citations omitted)); *Matter of Triangle Laboratories, Inc.*, 663 F.2d 463, 467 (3d Cir.1981) (" '[F]or section 365 to apply, the contract ... must be in existence. If the contract ... has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the trustee to assume....' " (quoting COLLIER ON BANKRUPTCY ¶ 365.02 at 365–13 (15th ed. 1981))). Indeed, it is a well-recognized principle of bankruptcy law that executory contracts validly terminated prior to the commencement of bankruptcy proceedings are "not resurrected by the filing of the petition in bankruptcy, and cannot therefore be included among the debtor's assets." *Id.* at 467–68 (citations omitted).

This Court effectively terminated the Dealer Agreement on May 14, 1992, *before* Coast Cities filed its petition in bankruptcy. Moreover, there was no agreement or stipulation that the Dealer Agreement's termination was to be conditioned upon the entering of the Order the following day. In fact, the Order specifically stated that the effective termination date of the Dealer Agreement was May 14, 1992. Therefore, it would be erroneous for the bankruptcy court to conclude that the Dealer Agreement could possibly be assumed or revived pursuant to § 365 since it was effectively terminated prior to Coast Cities' filing of a petition in bankruptcy.

## B. SECTION 548

■ Section 548 of the Bankruptcy Code proscribes fraudulent transfers made by or on behalf of a debtor within one year of his filing for bankruptcy.[2] Employing a broad interpretation of the term "transfer," plaintiff maintains that Navistar's termination of the Dealer Agreement constituted a " 'transfer of an interest of the debtor in property' for which the debtor 'received less than a reasonably-equivalent value' "— a transaction proscribed by § 548. Pl.'s Br. 2 (quoting 11 U.S.C. § 548(a); citing *id.* at § 101(54)). Such an assertion, however, is without merit in that § 548 has never been construed, nor was it intended, to afford debtors the option of reinstating involuntarily terminated executory contracts.

A necessary element for the relief sought by plaintiff under § 548 is a transfer. *Matter of Wey*, 854 F.2d 196, 198 (7th Cir.1988). Therefore, the initial inquiry in determining the propriety of the bankruptcy court's ruling with respect to this issue is whether Navistar's termination of the Dealer Agreement constituted a "relinquishment of a valuable property right" owned or possessed by Coast Cities. *See id.; Matter of Commodity Merchants, Inc.*, 538 F.2d 1260, 1263 (7th Cir.1976). The term "transfer" is defined by § 101(54) of the bankruptcy code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(54) (Supp. 1992). As previously discussed, however,

---

**2.** Section 548 of the Bankruptcy Code provides, in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

....

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made ..., or became insolvent as a result of such transfer....

11 U.S.C.A. § 548 (West Supp.1992).

**678**

Coast Cities possessed no rights as a matter of law which it could relinquish since the contract between Navistar and the debtor had expired by its own terms. *See Matter of Wey,* 854 F.2d at 199 ("Possession of expired rights is the equivalent of the possession of no rights. When a termination is pursuant to the terms of a contract, there is no transfer." (citing *Matter of Commodity Merchants, Inc.,* 538 F.2d at 1263.)). Therefore, this case presents no transfer for which to base a § 548 claim.

Moreover, the implications of a contrary finding would render virtually every validly terminated executory contract revivable by a debtor by simply initiating bankruptcy proceedings. Such a holding is not only unwarranted, but contrary to the intent of the drafters of the code. As a bankruptcy court in Wisconsin considering a similar issue explained:

> The structure of the Bankruptcy Code reflects this understanding of the difference between the loss of rights under an executory contract and other transfers of property. A separate section (11 U.S.C. § 365) governs the treatment of executory contracts. It would be anomalous, to say the least, to expect that the drafters of a generally thrifty codification of bankruptcy law would devote a substantial section of the Code to the subject of the assumption or rejection of executory contracts and unexpired leases, while at the same time allowing a portion of that subject to spill over into the section governing fraudulent transfers and obligations. There is no indication in the language of § 365, § 548, or the legislative history of the Code, that the drafters had such an unlikely intention. Nor has any court, so far as we are informed, so concluded since the adoption of the Bankruptcy Code.

*In re Jermoo's Inc.* 38 B.R. 197, 204 (Bankr.W.D.Wis.1984) (internal citation omitted). Therefore, it would also be erroneous for the bankruptcy court to conclude that Navistar's termination of the Dealer Agreement could possibly qualify as a "fraudulent transfer" avoidable by plaintiff pursuant to § 548.

## IV. CONCLUSION

Because this Court finds that the bankruptcy court erred as a matter of law in concluding that plaintiff demonstrated a likelihood of success on the merits, it is unnecessary to examine the remaining elements. Accordingly, the Order of the bankruptcy court is hereby reversed.