In re Roger Clinton HAINES, Debtor.

Roger Clinton HAINES, Plaintiff,

v.

REGINA C. DIXON TRUST,
et al., Defendants.

Bankruptcy No. 94–61085–S–11.
Adv. No. 94–6060–11.

United States Bankruptcy Court,
W.D. Missouri.

Feb. 28, 1995.

Thomas L. Williams, Joplin, MO, for plaintiff.

Theodore C. Salveter, III, Springfield, MO, for defendants.

### MEMORANDUM OPINION AND ORDER

KAREN M. SEE, Bankruptcy Judge.

Debtor in possession Roger Clinton Haines filed this adversary action seeking to avoid the pre-bankruptcy termination of a lease as a fraudulent transfer under 11 U.S.C. § 548(a)(2). Debtor and the defendant, the Regina C. Dixon Trust, filed cross-motions for summary judgment. Debtor in possession seeks summary judgment on the issue of whether the termination of the lease by the Dixon Trust prior to bankruptcy is a fraudulent transfer under § 548(a)(2). The Dixon

Trust filed a motion for summary judgment, arguing that the lease was not a fraudulent transfer, that the lease cannot be assumed under § 365(c)(3), and requesting relief from the automatic stay so the Dixon Trust can proceed with enforcement of its state court judgment.

The court has jurisdiction over this matter and finds that it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (H) and (O). After review of the cross-motions, briefs, arguments, statements of counsel and evidence submitted in support of the motions, the court finds that summary judgment should be entered in favor of defendants and against plaintiff, the debtor in possession. The court finds that § 365(c)(3) prohibits a debtor in possession from assuming a lease which was validly terminated before the bankruptcy proceeding was filed, that under the circumstances in this case a non-collusively terminated lease should not be avoided as a fraudulent transfer, and that the automatic stay should be terminated to permit defendant to enforce its state court judgment for possession of the premises.

## I. FACTS

The facts are undisputed. On November 6, 1991, debtor and two other parties entered into a ground lease with the Dixon Trust, so they could build and operate a restaurant called the Mendez Mining Company in Branson, Missouri. The ground lease provided that upon expiration of the lease, whether at the end of the term or after default, improvements would become the property of the Dixon Trust. Debtor built a restaurant on the property and began operation. Debtor subsequently failed to pay rent and permitted mechanics liens to be filed on the property.

On December 17, 1993, counsel for the Dixon Trust informed debtor by letter that he was in default on the lease. Debtor was given 30 days to cure the default. On January 5, 1994, counsel for the Dixon Trust again wrote debtor to inform him that rent for that month had not been paid. On February 9, 1994, the Dixon Trust terminated the lease because debtor did not pay the rent, did not have the property insured, al-lowed liens to be filed on the property, and subleased part of the property. All of these events or omissions were defaults under the lease.

Subsequently, the Dixon Trust filed an action in state court for possession of the premises and for damages. On October 5, 1994, the state court entered a judgment which confirmed that the lease was terminated on February 9, 1994, awarded possession of the premises to the Dixon Trust, and awarded damages of $67,895.94, which included back rent and payment for the mechanics liens. Under the terms of the lease and the judgment, the termination had the effect of a forfeiture of all improvements in favor of the Dixon Trust. There was no appeal from the state court judgment and it became final and unappealable before this Chapter 11 bankruptcy proceeding was filed on December 2, 1994.

Debtor does not allege actual fraud, but only that the termination is constructively fraudulent under § 548(a)(2). If the termination is avoided as a fraudulent transfer, debtor hopes to assume the terminated lease and sublease or assign it to another restaurateur. Debtor's counsel stated that debtor is negotiating with parties but does not have an agreement with any party for assignment or subleasing. Counsel also said that as part of a plan to assign to another party, debtor would pay the damages awarded by the state court from the proceeds of the assignment.

## II. LEGAL DISCUSSION

Debtor argues that the lease termination was a fraudulent transfer under the constructive fraud provisions of 11 U.S.C. § 548(a)(2), which provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

Debtor cited a line of cases which holds that termination of a lease prior to filing of a bankruptcy case can be avoided pursuant to § 548. *See In re Edward Harvey Co.,* 68 B.R. 851, 858 (Bankr.D.Mass.1987) (settlement agreement terminating lease was fraudulent transfer); *In re Queen City Grain, Inc.,* 51 B.R. 722 (Bankr.D.Ohio 1985) (lease termination was fraudulent transfer); *In re Fashion World, Inc.,* 44 B.R. 754, 756 (Bankr.D.Mass.1984) (agreement granting landlord option to terminate lease on 30 days notice was fraudulent transfer).

Defendant argues that 11 U.S.C. § 365(c)(3) prohibits debtor from assuming the lease and therefore, it would be futile to find that the lease was a fraudulent transfer. The court finds that § 365 is dispositive, and therefore, discusses it first.

### A. Lease Assumption Under § 365(c)(3)

■ Title 11 U.S.C. § 365(c)(3) prohibits assumption of a lease of nonresidential real property that has been terminated prior to the filing of the petition. The statute provides:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
>
> \* \* \* \* \* \*
>
> (3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief. . . .

The bankruptcy case was filed December 2, 1994. Ten months earlier, on February 9, 1994, the lease was terminated under Missouri law. The termination was confirmed in the state court judgment entered October 5, 1994, which granted possession of the premises to defendant. Pursuant to § 365(c)(3) the lease cannot be assumed. "If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then

there is nothing left for the [debtor] to assume or [reject]." *In re Huffman,* 171 B.R. 649, 653 (Bankr.W.D.Mo.1994).

Plaintiff cited *In re Edward Harvey Co.,* 68 B.R. 851 (Bankr.D.Mass.1987), which is at odds with the simple logic in *Huffman. Harvey* found the lease was not terminated for purposes of § 365(c)(3) because the trustee still had the power to file an action to avoid termination as a fraudulent transfer. *Harvey* stated, "[S]ection 365(c)(3) is simply not applicable where, as here, the lease was terminated in a constructively fraudulent manner. Clearly, the lease in question cannot be said to be finally and irredeemably terminated because this Court has the power to permit the Trustee to avoid the transfer and to order the reinstatement of the lease." *Id.* at 859.

■ This court declines to follow *Harvey,* which does not address the consequences of giving § 548(a) precedence over § 365(c)(3). To follow *Harvey* would require the court to ignore clear statutory language and congressional intent for treatment of terminated nonresidential leases as expressed in § 365(c)(3). "[I]t is a commonplace of statutory construction that the specific governs the general. . . ." *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037 [9], 119 L.Ed.2d 157 (1992). Section 365(c)(3), dealing expressly with nonresidential leases terminated prior to the bankruptcy filing, is a more specific section of the Bankruptcy Code than the provisions of § 548(a) for avoidance of fraudulent transfers generally. Thus, principles of statutory construction require that meaning and effect be given to § 365(c)(3), which must be applied instead of § 548(a) to the extent the two statutes are inconsistent.

■ To apply § 548 in the manner of *Harvey* would frustrate the specific congressional intent expressed in § 365(c)(3). It is a "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village Inc.,* 503 U.S. 30, 36, 112 S.Ct. 1011, 1015[6], 117 L.Ed.2d 181 (1992). If this court applied the *Harvey* rationale, it would render § 365(c)(3) inoperable. No

pre-bankruptcy termination of a lease would be final until the limitations period expired for filing of fraudulent transfer actions. Section 548 would be used by trustees and debtors in possession to avoid the result intended by § 365(c)(3). Section 365(c)(3) must take precedence over § 548(a). Therefore, there is nothing for the debtor to assume because the lease was terminated on February 9, 1994, 10 months before the debtor in possession filed his Chapter 11 bankruptcy petition.[1]

### B. Lease Termination as Fraudulent Transfer under § 548(a)(2)

#### 1. Policy Considerations

■ The avoidance of non-collusive prepetition lease terminations as fraudulent transfers presents significant policy considerations. Strict application of cases such as *Harvey* and *In re Queen City Grain, Inc.,* 51 B.R. 722 (Bankr.S.D.Ohio 1985), would make it impossible to settle rights in real property. Under the ruling in *Harvey,* landlords cannot rely on a state court judgment for termination of the lease and possession of the premises, but must wait until the statute of limitations on fraudulent transfer actions has passed. As one authority concluded, "[t]he *Harvey* [decision] . . . will introduce a significant degree of uncertainty into the termination of leases and the transfer, mortgaging, and insurance of property that has been the subject of a lease termination." Robert E. Goodman, Jr., *Avoidance of Lease Terminations as Fraudulent Transfers,* 43 Bus. Law. 807, 832 (May 1988) ("*Lease Terminations* ").

Concern with the uncertainty that *Harvey* –type decisions would have on commerce was a factor in *In re Metro Water and Coffee Servs., Inc.,* 157 B.R. 742, 745–47 (Bankr. W.D.N.Y.1993), which stated:

> It cannot go unsaid that the commercial ramifications of reading § 548 too literally so as to allow it to be used to avoid a prepetition, ordinary course of commercial business, non-collusive termination of an executory contract in accordance with its terms when the debtor has materially defaulted under the contract would be devastating.

*Metro Water* stated that it is "important to step back from the application of the literal provisions of Section 548(a) of the Bankruptcy Code . . . to the facts alleged in the Complaint to take a broad and realistic view of the case at hand." *Id.* at 746. *Metro Water* held that, although the termination of a concession agreement with a baseball team was technically a transfer under the broad definition in § 101(58)[54], the termination was not avoidable as a fraudulent transfer because of policy concerns.

Finally, *In re Jermoo's, Inc.,* 38 B.R. 197, 203–04 (Bankr.W.D.Wis.1984) stated:

> Since it is reasonable to assume that a great many executory contracts were terminated against insolvent debtors prior to bankruptcy filings, the nearly total silence of the courts strongly suggests a continuing practical construction of the fraudulent transfer statute by the bench and bar which excludes from the statute rightful terminations of operating agreements.

*See also Metro Water,* 157 B.R. at 746 n. 6. Therefore, the court will not find a "rightful non-collusive termination by reason of a debtor's material defaults to be a fraudulent transfer." *Id.*

1. Even if the court held the lease termination was avoidable under § 548 and the lease was assumable despite § 365(c)(3), debtor would not prevail in this action. Under § 365(b)(1), before debtor can assume the lease he must demonstrate that he has the ability to cure defaults, provide adequate assurance that he will compensate defendant for pecuniary losses resulting from the default and termination, and provide adequate assurance of future performance. Debtor cannot meet the requirements of § 365(b)(1). Debtor plans to pay any damages and cure defaults from proceeds to be received from an assignment after the proposed assumption. However, at the moment there are only negotiations with prospective tenants and no agreement for assignment or subleasing. There is no evidence that debtor could pay the damages of $67,895.94, cure other defaults such as the lack of insurance coverage, and provide adequate assurance that he will perform in the future. Thus, debtor cannot meet the conditions precedent to assumption.

### 2. Requirement of a Transfer

■ The elements of a constructively fraudulent transfer are: 1) a transfer of the debtor's interest in property; 2) made within one year before the petition was filed; 3) if the debtor received less than reasonably equivalent value; and 4) the debtor was insolvent. Although the Dixon Trust admitted elements two and four, it was prepared to argue that Debtor's valuation of the improvements was incorrect. The court need not reach the issue of valuation because the lease termination was not a transfer.

■ The first requirement of § 548(a)(2) is that there be a transfer of the debtor's interest in property. In re Robinson, 169 B.R. 171 (Bankr.N.D.Ill.1994), held that a Chapter 13 debtor could not assume a lease that had been terminated prepetition under Illinois law. The debtor argued that the automatic stay should remain in effect while the debtor litigated whether the lease termination was a fraudulent transfer. Robinson held "[the fraudulent transfer] argument must fail because, when Robinson's lease terminated, her interest in the property terminated as well. Thus, because no property interest belonging to Robinson was transferred, she has failed to prove the first element." Id. at 177[9].

Several cases have found that lease terminations can be fraudulent transfers. In re Edward Harvey Co., 68 B.R. 851, 858 (Bankr.D.Mass.1987) (settlement agreement terminating a lease was a transfer); In re Fashion World, Inc., 44 B.R. 754, 756 (Bankr.D.Mass.1984) (agreement granting landlord an option to terminate lease on 30 days notice was a transfer under § 548); In re Queen City Grain, Inc., 51 B.R. 722 (Bankr.S.D.Ohio 1985) (lease termination between two related corporations). See also In re Pinto, 89 B.R. 486 (Bankr.E.D.Pa.1988); In re Indri, 126 B.R. 443 (Bankr.D.N.J.1991).

"Transfer" is defined in the Bankruptcy Code as "every mode direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(58)[54]. In Queen City, 51 B.R. at 725–26, which involved termination of a lease between related corporations, the party opposing the characterization of a termination

as a transfer argued that "termination of an interest in leasehold property by reason of default is outside the Bankruptcy Code definition of transfer (at 11 U.S.C. § 101[ (58) ][54] )." The court held that "[t]here is just no getting away from the fact that upon the termination of [the debtor's] lease, there was a 'parting with ... an interest in property,' for after the termination of the lease [the debtor] no longer had an interest in the Kellogg Avenue grain elevator facility." Id. (citing In re Ferris, 415 F.Supp. 33 (Bankr.D.Okla.1976) (Bankruptcy Act case)).

Both Queen City and Harvey can be distinguished factually from the present case. In Harvey, the termination was pursuant to a settlement agreement entered into by debtor and the landlord. In Queen City, the landlord and debtor were related corporations. Thus, in both cases there was a certain amount of cooperation or collusion which may have affected the courts' perspectives and which does not exist in the present case. Here, it is undisputed that pursuant to the terms of the contract between the parties the Dixon Trust terminated the lease 10 months before the bankruptcy case was filed and also obtained a state court judgment for possession and damages which was final and unappealable before the bankruptcy case was filed.

In an analogous situation involving an executory contract, In re Jermoo's Inc., 38 B.R. 197 (Bankr.W.D.Wis.1984), refused to follow Ferris and held that a franchisor's termination of a franchise agreement did not constitute a transfer under § 548(a)(2) because § 365 is the exclusive statute dealing with executory contracts. Jermoo's, Id. at 204, reasoned that:

It would be anomalous, to say the least, to expect that the drafters of a generally thrifty codification of bankruptcy law would devote a substantial section of the Code to the subject of the assumption or rejection of executory contracts and unexpired leases, while at the same time allowing a portion of that subject to spill over into the section governing fraudulent transfers and obligations. There is no in-

dication in § 365, § 548, or the legislative history of the Code, that the drafters had such an unlikely intention.

Furthermore, *Jermoo's* found that the termination of the contract was not a transfer, but a transformation of rights:

When property, real, tangible, or intangible, is transferred, the property itself is not transformed by the exchange. The termination of the right to perform on an executory contract, according to the terms of that contract, differs from a transfer of property in this sense: the rights terminated, unlike property, are transformed. At the option of the terminating party, the rights may simply disappear, or as with other kinds of property, may be dispersed, reconveyed or retained.

*Id.; but see Lease Terminations,* 43 Bus. Law. at 814 (transfer/transformation distinction is abstract considering the Bankruptcy Code's broad definition of "transfer").

■ *In re Coast Cities Truck Sales, Inc.,* 147 B.R. 674 (Bankr.D.N.J.1992), *aff'd,* 5 F.3d 1488 (3d Cir.1993), held that the termination of a dealership agreement was not a transfer so as to be attacked under § 548(a)(2). *Coast Cities* stated that the debtor "possessed no rights as a matter of law which it could relinquish since the contract between Navistar and the debtor had expired by its own terms." *Id.* at 678. *Coast Cities* cited *In re Wey,* 854 F.2d 196, 199 (7th Cir.1988): "Possession of expired rights is the equivalent of the possession of no rights. When a termination is pursuant to the terms of a contract, there is no transfer." *Id.* In the present case the right to lease the premises was transformed into no right at all when the lease was terminated pursuant to the terms of the contract between the parties. *See In re Robinson,* 169 B.R. 171, 177[9] (Bankr.N.D.Ill.1994).

As *Coast Cities,* 147 B.R. at 678, stated, finding that an executory contract termination is a transfer for purposes of § 548 "would render virtually every validly terminated executory contract revivable by a debtor by simply initiating bankruptcy proceedings. Such a result is not only unwarranted, but is contrary to the intent of the drafters of the code." According to the article *Lease*

*Terminations,* an argument implied, but not expressly stated, by *Jermoo's* was that "the Bankruptcy Code generally upholds the pre-bankruptcy termination of contracts and leases without threat of later attack. In fact, bankruptcy courts generally disclaim the power to override the pre-petition termination of an executory contract or lease." 43 Bus.Law. at 816 (citing *Moody v. Amoco Oil Co.,* 734 F.2d 1200 (7th Cir.1984), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984) (cannot revive agreement terminated before bankruptcy if termination otherwise effective)).

■ The court will follow the reasoning in *Jermoo's* and *Coast Cities* and find that a lease termination pursuant to the terms of the contract between the parties, prior to the bankruptcy filing, is not a transfer.

### III. CONCLUSION

The court holds that § 365(c)(3), the specific statute relating to leases terminated before bankruptcy, should be given effect over the inconsistent provisions of § 548(a)(2), the more general statute. Therefore, even if the lease termination were a transfer for purposes of § 548(a)(2), which the court does not find, debtor cannot assume the lease because it is prohibited by § 365(c)(3). Therefore, the cross-motions for summary judgment must be ruled in favor of defendant, the Dixon Trust, and against plaintiff, the debtor in possession. Accordingly, it is

**ORDERED, ADJUDGED and DECREED** as follows:

1. The motion of plaintiff and debtor in possession Roger Clinton Haines for summary judgment is denied and the cross-motion of defendant and creditor the Regina C. Dixon Trust is granted.

2. Judgment is entered against plaintiff Roger Clinton Haines and in favor of defendants on the plaintiff's complaint and it is declared that the termination of the ground lease prior to the filing of plaintiff's Chapter 11 proceeding is not an avoidable fraudulent transfer.

3. The automatic stay is terminated so defendants may enforce the state court judgment for possession of the premises.

4. Costs shall be assessed against plaintiff and debtor in possession Roger Clinton Haines.