## In re EGYPTIAN BROTHERS DONUT, INC., Debtor.

## In re ALFAJR CORPORATION, Debtor.

**Bankruptcy Nos. 95–27103 (NLW), 95–27104 (NLW).**

United States Bankruptcy Court, D. New Jersey.

Dec. 8, 1995.

Schwartz, Tobia & Stanziale, P.A., Montclair, New Jersey by Ben H. Becker, for Debtors-in-Possession.

Abraham, Pressman & Bauer, Cherry Hill, New Jersey by Craig R. Tractenberg, for Dunkin' Donuts, Inc.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

THIS MATTER is before the court upon the motion by Dunkin' Donuts Inc. and Third Dunkin' Donuts Realty, Inc. to Vacate the Automatic Stay and for Mandatory Abstention in the administratively consolidated bankruptcy cases of Egyptian Brothers Donuts, Inc., and Al–Fajr Corp. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the United States District Court of New Jersey dated July 23, 1984. Moreover, this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (G).

## BACKGROUND

On February 26, 1993 Dunkin' Donuts, Inc. entered into separate franchise agreements with Egyptian Brothers Donuts, Inc. ("Egyptian Brothers") and Al–Fajr Corp., ("Al–Fajr") corporate entities controlled by the same principals. Pursuant to the terms of the franchise agreements, Egyptian Brothers and Al–Fajr operated stores located in Caldwell, New Jersey and East Orange, New Jersey, respectively.

Under the terms of the franchise agreements, the Debtors were required to pay franchise fees, make advertising contributions, and fulfill various non-monetary obligations, including the obligation to submit weekly, monthly, and annual reports and financial statements. A franchisee's failure to fulfill its obligations under the franchise agreements constitutes a default which might result in the termination of the franchise by Dunkin' Donuts.

It appears that both Egyptian Brothers and Al–Fajr fell into default under the franchise agreements. Dunkin' Donuts sent the notices required by the franchise agreements and thereafter commenced an action in the Superior Court of New Jersey to declare that the franchise agreements and lease agreements had been terminated. In the course of the state court matter the parties ultimately reached an agreement to conclude the litigation, the terms of which were embodied in an order of the court dated June 15, 1995. Among other terms, the Debtors agreed to entry of judgments of possession for both store locations and further agreed that writs of possession would issue in the event that they failed to make certain payments by June 16, 1995.

It further appears that the payments were not made, and on June 29, 1995, the Superior Court issued writs of possession with respect to both the Caldwell and East Orange locations. The Debtors subsequently obtained a temporary restraining order staying the writs pending a hearing. At the hearing on September 15, 1995, the court determined that Dunkin' Donuts was entitled to possession of both stores and issued an order dated September 15, 1995, which vacated the restraints and directed the surrender of the premises by September 25, 1995. Before the surrender occurred, Egyptian Brothers and Al–Fajr filed petitions for relief under Chapter 11 of the Bankruptcy Code. Within a matter of days after the filing, Dunkin' Donuts filed the instant motion for relief from the automatic stay, or alternatively for this court to abstain so that the state court proceedings could go forward.

Just prior to filing their opposition to the Dunkin' Donuts motion, the Debtors commenced an adversary proceeding to avoid the terminations pursuant to 11 U.S.C. §§ 547 and 548. In their opposition papers the Debtors asserted that neither relief from the stay nor abstention was warranted since the terminations could be avoided in the adversary proceeding because they constituted transfers for less than reasonable value. Mohamed Elbery, a principal of the Debtors, estimates that the combined value of both locations ranges from $650,000 to $695,000, and that at most, only $60,000 is owed to Dunkin' Donuts for franchise fees, interest, taxes, and rent. Although the Debtors initially asserted that the agreements remain executory, on the motion return date they conceded that the agreements had terminated prior to the bankruptcy.

At the hearing the court rendered an oral opinion granting relief from the stay, but reserved the right to issue the written opinion which follows.

## Analysis

█ In opposing the instant motion, Debtors submit that the court should avoid Dunkin' Donuts' pre-petition termination of the applicable leases and franchise agreements pursuant to Bankruptcy Code ("Code") §§ 547[1] and 548[2]. Avoidance of the termination requires the court to accept that a pre-petition termination of an executory contract constitutes a "transfer," since Code §§ 547 and 548 only apply if a "transfer" has occurred. There exists a substantial body of case law which supports the position that a pre-petition termination of an agreement does constitute a "transfer." *See In re Indri*, 126 B.R. 443 (Bkrtcy.D.N.J.1991); *In re Queen City Grain, Inc.*, 51 B.R. 722 (Bkrtcy. S.D.Ohio 1985); *In re Harvey Co., Inc.*, 68 B.R. 851 (Bkrtcy.D.Mass.1987); *In re Fashion World*, 44 B.R. 754 (Bkrtcy.D.Mass. 1984).

In *In re Indri*, the court faced a fact pattern similar to that in the case *sub judice*. Specifically, in *Indri*, the debtor was a lessee on a lease covering a residence and a farm. The lessor terminated the lease, pre-petition,

1. Section 547(b) of the Code allows a bankruptcy trustee to avoid:

> any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such a creditor would receive if—
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

2. The relevant portion of section 548 of the Code states:

> (a) the trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

due to non-payment of rent. Thereafter the debtor filed a Chapter 11 petition, and subsequently brought motions before the bankruptcy court to: 1) avoid the lease terminations as either a fraudulent transfer pursuant to 11 U.S.C. § 548 or a voidable preference pursuant to 11 U.S.C. § 547; and 2) to extend time to assume or reject the subject lease.

Because the debtor erroneously brought the action by motion, instead of by way of an adversary complaint, the court did not decide whether to avoid the termination and allow the debtor the opportunity to assume the lease. The court did decide the issue of whether a pre-petition termination of a lease constitutes a "transfer," which implicates Code §§ 547 and/or 548. In holding that such a termination constitutes a "transfer," the court referred to the definition contained in Code § 101(50), which provides:

> (50) "transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption;

The court concluded that a pre-petition termination of a lease constitutes a, "transfer," since the termination of debtor's lease was a "parting ... with an interest in property." *In re Indri*, 126 B.R. at 446; *In re Queen City Grain, Inc.*, 51 B.R. 722, 725 (Bkrtcy. S.D.Ohio 1985).

While in *Indri*, the court did not rule on the issue of whether the pre-petition termination should be avoided and the debtor thereby given the opportunity to either assume or reject pursuant to Code § 365, courts have allowed just that to occur. *See In re Harvey Company, Inc.*, 68 B.R. 851, 859 (Bkrtcy.D.Mass.1987).

If this court were to follow this authority, the instant Debtors could avoid the pre-petition termination of the franchise agreements despite their material default, and either assume or reject the agreements pursuant to § 365. The court declines to follow this authority, however, since such a consequence requires an overly broad application of §§ 547 and 548, violates the express lan-guage of Code § 365(c)(3), and significantly and adversely affects ordinary commercial contractual relationships.

Code section 365(c)(3) states:

> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

> (3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

Some courts have determined that this section does not prohibit a trustee or debtor from assuming an agreement terminated pre-petition, if that termination constitutes an avoidable transfer under §§ 547 or 548. *In re Harvey Company, Inc.*, 68 B.R. at 859. This court finds more persuasive those cases which have held that a debtor or trustee cannot assume an agreement which was terminated by its terms pre-petition because of a material default.

In *In re Haines*, 178 B.R. 471 (Bkrtcy. W.D.Mo.1995), the debtor had been the lessee on a lease which covered the land and building upon which the debtor had operated a restaurant. When the debtors failed to pay rent, failed to insure the property, and allowed mechanics liens to be filed, all of which constituted defaults under the lease and were grounds for termination, the lessors terminated the agreement. Subsequently, the lessors obtained a state court judgment for possession and damages. As occurred in the instant case, the state court judgment memorialized the fact that the lease had been terminated.

Following the entry of the judgment, the debtor filed a Chapter 11 petition and sought to avoid the termination as constructively fraudulent under § 548(a)(2). If the termination was avoided, debtor hoped to assume the lease and assign it to another restaurateur. The court rejected the debtors attempts on several grounds, but primarily due to the express language of § 365(c)(3). Specifically, the court declined to follow the *Harvey* decision, instead finding that to allow a debtor to avoid a pre-petition termination

and assume the agreement would violate long established rules of statutory construction. The court held,

> To follow *Harvey* would require the court to ignore clear statutory language and congressional intent for treatment of terminated nonresidential leases as expressed in § 365(c)(3). "[I]t is a commonplace of statutory construction that the specific governs the general...." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037[9], 119 L.Ed.2d 157 (1992). Section 365(c)(3), dealing expressly with nonresidential leases terminated prior to the bankruptcy filing, is a more specific section of the Bankruptcy Code than the provisions of § 548(a) for avoidance of fraudulent transfers generally. Thus principles of statutory construction require that meaning and effect be given to § 365(c)(3), which must be applied instead of § 548(a) to the extent the two statutes are inconsistent.

*Id.* at 474. A similar observation was made in the factually similar case of *In re Jermoo's, Inc.*, 38 B.R. 197 (Bkrtcy. W.D.Wisc.1984). *Jermoo's* involved a debtor, Jermoo's, Inc., who had operated three retail gasoline stations pursuant to franchise-dealership contracts with Amoco Oil Co. The dealership contracts contained provisions which provided that Amoco could terminate Jermoos, Inc. as franchisee if Jermoos failed to cure dishonored checks within five days of notice. Subsequently, checks were dishonored, Amoco sent notice, debtor failed to cure in time, and the agreements were terminated. Jermoos then filed a Chapter 11 petition and thereafter brought an adversary complaint seeking to avoid the terminations as fraudulent transfers under 11 U.S.C. § 548(a)(2). In holding that § 548 could not be used to avoid a pre-petition termination of the agreements the court stated,

> The structure of the Bankruptcy Code reflects this understanding of the difference between the loss of rights under an executory contract and other transfers of property. A separate section (11 U.S.C. § 365) governs the treatment of executory contracts. It would be anomalous, to say the least, to expect that the drafters of a generally thrifty codification of bankruptcy

law would devote a substantial section of the Code to the subject of the assumption or rejection of executory contracts and unexpired leases, while at the same time allowing a portion of that subject to spill over into the section governing fraudulent transfers and obligations.... A statute should be construed as a harmonious whole. 73 Am.Jur.2d, Statutes, § 191 (1974). This is even truer of a Code. The general language of § 548 must be read harmoniously with the rest of the Code, including § 365 (and § 108) in order to give effect to the legislative intent.

The court is persuaded by the analysis of the statutory framework stated by both *Jermoo's* and *Haines*. *See also, In re Metro Water & Coffee Services, Inc.*, 157 B.R. 742 (Bkrtcy.W.D.N.Y.1993). Therefore, though the court agrees with the Debtors view that a literal definition of the term transfer encompasses termination of the franchise agreements and the leases, its application in Code §§ 547 or 548 so as to avoid the terminations is not consistent with the statutory framework. *See In re Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 642, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978) ("in interpreting the words of a statute courts have 'some scope for adopting a restricted rather than a literal or usual meaning where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute'"), quoting *Commissioner v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965).

In addition, as a matter of policy, the court finds the Debtors' use of Code §§ 547 and 548 to essentially revive the terminated agreements to be unwarranted. This issue has troubled several courts and commentators as well. In *In re Coast Cities Truck Sales, Inc.*, 147 B.R. 674, *aff'd* 5 F.3d 1488 (D.N.J.1992) the court faced a fact pattern similar to the instant case and the cases cited herein. In *Coast Cities*, the debtor operated pursuant to a dealership agreement with Navistar International Transportation Company ("Navistar"). The dealer agreement provided that Navistar could terminate the agreement in the event the debtor failed to pay a debt due to Navistar or one of its

affiliated companies. In fact, debtor fell into arrears on several occasions and after efforts to cure failed, Navistar terminated the agreement. Debtor brought an action to enjoin the termination which the court denied. Before the court signed the order denying debtors motion and memorializing the termination, debtor filed a Chapter 11 bankruptcy petition.

In the manner typical of this line of cases, the debtor brought an adversary complaint seeking to avoid the termination as a fraudulent transfer under § 548, or alternatively, to have the agreement declared an existing executory contract which could be assumed pursuant to § 365. In holding that neither §§ 365 or 548 allowed the debtor to avoid the consequences of the termination, the court noted their concern with the troubling policy issues implicated by debtors position:

> [T]he implications of a contrary finding would render virtually every validly terminated executory contract revivable by a debtor by simply initiating bankruptcy proceedings. Such a holding is not only unwarranted, but contrary to the intent of the drafters of the code.

*Id.* at 678. The *Haines* court voiced similar concerns,

> The avoidance of non-collusive prepetition lease terminations as fraudulent transfers presents significant policy considerations. Strict application of cases such as *Harvey* and *In re Queen City Grain, Inc.,* would make it impossible to settle rights in real property. Under the ruling in *Harvey,* landlords cannot rely on a state court judgment for termination of the lease and possession of the premises, but must wait until the statute of limitations on fraudulent transfer actions has passed. As one authority concluded, "[t]he *Harvey* [decision] . . . will introduce a significant degree of uncertainty into the termination of leases and the transfer, mortgaging, and insurance of property that has been the subject of a lease termination." Robert E. Goodman, Jr., *Avoidance of Lease Terminations as Fraudulent Transfers,* 43 Bus. Law. 807, 832 (May 1988) ("Lease Terminations").

*Id.* at 475. This court agrees with the policy concerns these courts have expressed.

■ Finally, Debtors assert that Code § 541 indicates Congress' intent to include as property of the estate agreements which terminate other than by the expiration of a stated term. Specifically, Debtor's submit that Code § 541(b)(2) supports their position, since in that subsection Congress specifically excluded from the estate,

> (2) any interest of the debtor as a lessee under a lease of non-residential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title.

Debtors submit that because Congress specifically excluded from the estate only leases which terminate by the expiration of a stated term, leases which are terminated involuntarily, such as occurred in this instance, should be included in estate property.

■ This argument, even if true, would not allow the Debtor to assume the leases and franchise agreements at issue here, however. The same analysis which the court applied in deciding that §§ 547 and 548 could not be used to allow a debtor or trustee to assume a terminated agreement applies with equal force to this issue. Specifically, § 365(c)(3) is explicit and intended to deal with the issue of leases and executory contracts, and therefore, it would be improper to allow a more general section of the Code, like § 541, to operate in such a manner that it allows what the more specific section proscribes. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037[9], 119 L.Ed.2d 157 (1992); *In re Haines,* 178 B.R. at 474. In addition, interpreting § 541 as the Debtors propose would violate that long accepted rule that, "a debtor cannot assume an executory contract or a lease which was validly terminated prior to the institution of bankruptcy proceedings." *In re Indri,* 126 B.R. at 445, citing *In re Triangle Laboratories, Inc.,* 663 F.2d 463, 467–68 (3d Cir.1981); *In re Jolly,* 574 F.2d 349 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978); *Robertson v. Langdon,* 72 F.2d 148 (7th Cir.1934). Therefore, the court finds that § 541 does

not allow the Debtors to avoid the pre-petition terminations of their leases and franchise agreements.

### Conclusion

For the foregoing reasons, the Court finds that the leases and franchise agreements were effectively terminated pre-petition and Debtors lost all rights in them. Therefore, the relief Dunkin' Donuts and Third Dunkin' Donuts Realty seek will be granted so that they might continue with their efforts to regain possession of their building premises and franchise trade name.

Michael D. Ward, Philadelphia, PA, for Debtor.

Frank L. Majczan, Jr., Majczan & Majczan, Allentown, PA, for Transamerica Consumer Discount Co.

Shawn Lau, Reading, PA, for Meridian Bank.

Edward Sparkman, Chapter 13 Trustee, Philadelphia, PA.